**RECEIVER FOR CITIZEN'S NATIONAL ASSURANCE COMPANY, an Impaired Company, Appellant,**

v.

**Johnny Ray HATLEY, Appellee.**

No. 3–92–298–CV.

Court of Appeals of Texas, Austin.

April 7, 1993.

Robert D. Stokes, Steven M. Tipton, Flahive, Ogden & Latson, Austin, for appellant.

Timothy Patton, Pozza & Patton, San Antonio, for appellee.

Before POWERS, KIDD and SMITH, JJ.

KIDD, Justice.

The Receiver for Citizen's National Assurance Company[1] appeals the district court's judgment awarding Johnny Ray Hatley workers' compensation benefits that Hatley claimed arose from an on-the-job truck accident. We will affirm.

## BACKGROUND

On October 31, 1985, Johnny Ray Hatley was injured in a truck collision while in the course and scope of his employment as a hauler with Moore Transportation Company. Near the Texas–New Mexico border, a truck collided with the truck that Hatley was driving.

Prior to the present lawsuit, Hatley commenced a third-party action against the tortfeasor, which he settled for a net recovery of $85,000 from the negligent third party. Pursuant to the settlement, the Receiver[2] received $16,000 and signed a document entitled, "RELEASE IN FULL OF ALL CLAIMS AND RIGHTS."

On March 21, 1989, Hatley filed the present action and tried the underlying workers' compensation case before a jury which returned a verdict that Hatley was totally and permanently incapacitated as a result of his on-the-job injury. In its motion for take nothing judgment, the Receiver argued that the $85,000 third-party settlement should be treated as an advance against any workers' compensation recovery under the workers' compensation statute. The trial court rendered judgment on the verdict in favor of Hatley and against the Receiver for approximately $78,000 of workers' compensation benefits plus interest.

In a single point of error, the Receiver argues that the trial court erred in failing to treat the third-party settlement as an advance against workers' compensation benefits under former article 8307, section 6a[3] of the workers' compensation law. Maintaining that the release has no legal effect, the Receiver contends that (1) the treatment of the settlement is governed entirely by statute; (2) the subject of the statutory offset is not included within the release; and (3) even if the release were determined to address the offset issue, the release is not supported by consideration.

## DISCUSSION AND HOLDING

### Application of the Workers' Compensation Law

■ The heart of this appeal concerns whether the third-party settlement should be treated as an advance according to former section 6a of the workers' compensation law or whether the release signed by the Receiver precluded such treatment. Section 6a governs the disbursement of recovery, if any, by a workers' compensation beneficiary from a third-party recovery and states in pertinent part:

> [T]he net amount recovered by such beneficiary from the third party action shall be applied to reimburse the association for past benefits and medical expenses paid and any amount in excess of past benefits and medical expenses shall be treated as an advance against future benefit payments of compensation to which the beneficiary is entitled to receive under the Act.

The Receiver contends that the operation of the offset is controlled *entirely* by statute, and therefore, the release has no effect. To hold otherwise, the Receiver maintains, would result in overcompensation to Hatley at the expense of the Receiver. To support this contention, the Receiver relies on two cases: *Goodman v. Trav-*

---

1. Citizen's National Assurance Company was the workers' compensation carrier for Hatley's employer, Moore Transportation Company. Citizen's National Assurance Company went into receivership before trial and the Receiver assumed the company's workers' compensation obligations.

2. The Receiver, having assumed the workers' compensation obligations for Citizen's National

Assurance Company, was entitled to recoup its expenditures for benefits from the third-party settlement.

3. Act of May 17, 1985, 69th Leg., R.S., ch. 326, sec. 1, § 6a, 1985 Tex.Gen.Laws 1387, 1387, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(10), 1989 Tex.Gen.Laws 1, 114.

*elers Insurance Co.,* 703 S.W.2d 327 (Tex. App.—Corpus Christi 1985, no writ), and *Petro–Weld, Inc. v. Luke,* 619 F.2d 418 (5th Cir.1980). These cases are both distinguishable.

In *Goodman,* the injured worker brought a third-party action, in which the carrier intervened. The parties agreed that the carrier was to receive "$50,000 from the first $150,000 to be paid by the settling defendant, and the balance of its subrogation interest ($66,459.28) from any recovery beyond the settlement amount." 703 S.W.2d at 328. The agreement was silent on the issue of future medical payments. After the settlement, the worker incurred additional medical expenses that the carrier refused to reimburse. The court held that the worker was not entitled to recover this additional benefit from the carrier.

The agreement in *Goodman* merely delineated the allocation of the third-party settlement between the worker and the carrier. It is clear from the language of the opinion that the carrier did not waive its subrogation interest; the agreement merely limited the reimbursement of the remainder of the carrier's subrogation interest to any recovery in excess of the settlement amount. Here, the release, by its language, discharges Hatley from "any and all rights, claims, demands and damages of any kind." Further, the agreement in *Goodman* was silent as to any future medical payments. The release involved in the case at bar specifically extends to future claims and expressly waives "all rights under any law or *statute.*" (Emphasis added). We do not read *Goodman* to stand for the proposition that the statute alone controls the operation of the offset. Because the agreement in *Goodman* did not address the possibility of an offset, we conclude that *Goodman* is distinguishable from the present case.

*Petro–Weld* involved the federal Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1988), and not the Texas workers' compensation law. Therefore, we conclude that *Petro–Weld* is distinguishable and not controlling.

**Effect of the Release**

The Receiver next contends that the release is one of a general nature and thus does not include the subject of the offset, while Hatley maintains that the release specifically waives all past and future rights of the Receiver.

■ A release is a contract and is subject to the rules of construction that govern contracts. *See Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990). When the terms of written agreements are unambiguous, the intent of the parties must be determined from the plain language of the agreements. *Allison v. National Union Fire Ins. Co.,* 734 S.W.2d 645, 646 (Tex. 1987). Furthermore, "[i]n order to effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released. Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged." *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex.1991).

■ As a preliminary matter we note that the release is entitled, "RELEASE IN FULL OF ALL CLAIMS AND RIGHTS." The first paragraph of the release constitutes a general release of "all rights, claims, demands and damages of any kind, known or unknown" arising from injuries sustained in the truck collision. However, in the second paragraph, the Receiver specifically waives any rights that the Receivership might pursue under the statute: "I and the Receivership hereby *expressly waive and relinquish* any and all rights *under any law or statute* to the contrary." This language clearly encompasses any statutory rights the Receivership may have had under former section 6a of the workers' compensation law. Language in paragraph six of the release extends this express waiver to future subrogation and reimbursement rights: "The Receiver and the Receivership hereby agree that any liens, *subrogation or reimbursement rights which might arise out of this accident and settlement* will be assumed by the Receiver and the Receivership." (Emphasis added).

We conclude that the release is not a general release as argued by the Receiver, but instead constitutes a specific waiver by the Receiver of its rights under former section 6a of the workers' compensation law. A plain reading of the release demonstrates that the Receiver expressly waived any past and future claims under the statute, and, furthermore, released all subrogation and reimbursement rights.

### Consideration for the Release

 The Receiver finally argues that, in the event the release is determined to address the subject of an offset, the release is not supported by consideration. This argument fails for several reasons. First, the Receiver did receive $16,000 for release of its claims and rights. The release document clearly states that all claims and rights were released "FOR AND IN CONSIDERATION OF THE SUM OF Sixteen Thousand Dollars ($16,000)." The Receiver maintains that, because the $16,000 was paid by the third-party tortfeasor and not by Hatley, Hatley did not provide the necessary consideration for the release. However, "sufficient consideration for a contract may consist of either a benefit to the promisor *or a loss or detriment to the promisee.*" *Buddy "L", Inc. v. General Trailer Co.,* 672 S.W.2d 541, 547 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (citations omitted). Surrendering a legal right represents valid consideration. *See id.; see also Taylor v. Bonilla,* 801 S.W.2d 553, 556–57 (Tex.App.—Austin 1990, writ denied) (surrender of contract rights constitutes valid consideration). Hatley's settlement of the third-party action constitutes legally sufficient consideration because Hatley surrendered his legal right to a jury trial and received $16,000 less than the total amount of the settlement. Second, the Receiver acknowledged that he deemed the consideration to be sufficient:

> I nevertheless consider that the money now being paid is fair and equitable under all circumstances. I and the Receivership accept it as a full and final settlement of all claims, rights and damages which the Receiver and the Receivership now have or may have against the parties being released, their insurers, agents or representatives.

Based on these facts, we conclude that the release was supported by consideration. We, therefore, overrule the Receiver's point of error.

### CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.