ULICO CASUALTY COMPANY,
Petitioner,

v.

ALLIED PILOTS ASSOCIATION,
Respondent.

No. 06–0247.

Supreme Court of Texas.

Argued April 11, 2007.

Delivered Aug. 29, 2008.

Donald Colleluori, Stephen D. Howen, Figari & Davenport, LLP, Dallas TX, for Petitioner.

J. Lyndell Kirkley, B. Daniel Berryman, Kirkley Broiles & Berryman, L.L.P., R. David Broiles, Cagle & Broiles, Fort Worth TX, for Respondent.

Wade Caven Crosnoe, Thompson Coe Cousins & Irons, L.L.P., Austin TX, for Amicus Curiae Complex Insurance Claims Litigation Association.

Justice JOHNSON delivered the opinion of the Court.

In this case we consider whether an insurer's contractual coverage under a claims-made policy can be expanded by the doctrines of waiver and estoppel to cover a risk not otherwise within the policy coverage: a suit against the insured that was not reported until after the policy expired. We hold that if an insurer's actions prejudice its insured, the insurer may be estopped from denying benefits that would be payable under its policy as if the risk had been covered, but the doctrines of waiver and estoppel cannot be used to rewrite the contract of insurance and provide contractual coverage for risks not insured.

## I. Background

Ulico Casualty Company issued a claims-made liability policy to the Allied Pilots Association (APA). The policy specified that it was effective from August 25, 1998 through August 25, 1999 and provided coverage, as relevant to this matter, for

> all Loss which such Insured shall become legally obligated to pay on account of any claim made against the Insured during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured before or during the Policy Period, and reported to [Ulico] ... during the Policy Period or the Extended Reporting Period, if elected.

The policy defined "loss" to include defense costs. The policy required that, as a condition precedent to APA's rights under the policy, APA "give to [Ulico] written notice during the Policy Period or the Extended Reporting Period, if elected, of any claim made against [APA] for a Wrongful Act." The policy provided that if Ulico cancelled or refused to renew it, APA could have an extended period of twelve months beyond the policy expiration date in which to report claims made against it— an Extended Reporting Period (ERP)— based on acts committed by APA within the policy period, provided APA paid an additional premium of fifty percent of the annual premium. The ERP section also provided that if APA terminated the policy or declined to renew, then Ulico could, "[i]f requested, at its sole discretion, grant an Extended Reporting Period."

APA paid premiums for and Ulico issued two written endorsements, each amending the policy and providing for an extension of the Policy Period. The endorsements first changed the policy period from August 25, 1998 to September 25, 1999, and then to October 25, 1999. On October 4, 1999, twenty-one days before the amended policy period expired, APA was served with a suit styled *Allen v. American Airlines, Inc.* APA forwarded the *Allen* suit papers to its insurance broker and to the law firm of James & Hoffman, its regular outside litigation counsel. James & Hoffman undertook defense of APA. Ulico was not notified of the suit until APA's agent forwarded notice of suit on November 5, 1999.[1]

In December 1999, Ulico's claims analyst, Sheila Bowers, informed APA by letter that the claim was being reviewed and that APA would be notified of Ulico's coverage decision. Referencing the Ulico policy, she advised APA that no defense fees, costs, charges, or expenses may be incurred or settlements made without Ulico's prior written consent. In March 2000, Bowers sent APA's counsel a letter stating that the policy provided for defense costs, but Ulico was expressly reserving all its rights to deny coverage. She enclosed litigation management forms, attorney evaluation forms, and a form for the attorney's time forecast. James & Hoffman did not respond to Bowers's letter. In April 2001, Bowers wrote the law firm another letter which stated that pursuant to the reservation of rights letter of March 1, 2000, "Ulico has agreed to reimburse [APA] for reasonable and necessary defense expenses." In May 2001, the firm responded and enclosed its billings of approximately $635,000 for defending APA in

the suit. At that point, the law firm had defended the suit and filed a motion for summary judgment on behalf of APA without any reports to or further contact with Ulico. Neither APA nor its defense firm had sought Ulico's approval for any actions or for authorization to incur expenses in defense of the lawsuit. The trial court granted summary judgment in APA's favor in September, and an appeal by the *Allen* plaintiffs was dismissed.

Ulico filed suit in November 2001 seeking a declaratory judgment that it did not have coverage and did not owe APA's defense costs. APA counterclaimed. At trial, a jury found in response to four liability questions that Ulico (1) granted an ERP during which APA reported the *Allen* suit, (2) agreed to pay the *Allen* defense costs separately and apart from the policy, (3) waived its right to assert that the policy did not cover the *Allen* defense costs, and (4) was estopped from asserting that the policy did not cover the *Allen* defense costs. The jury found damages of $308,235. On cross-motions for judgment notwithstanding the verdict, the trial court set aside the jury findings that Ulico granted an ERP, that Ulico agreed to pay defense costs separately from the policy, and of damages. The trial court entered judgment in favor of APA on the waiver and estoppel findings for $616,468.55.[2]

Relying on what has come to be referred to as the *Wilkinson* exception, *see Farmers Texas County Mutual Insurance Co. v. Wilkinson,* 601 S.W.2d 520 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.), the court of appeals affirmed on the basis of waiver and estoppel. 187 S.W.3d 91. It held that APA's recovery under its waiver and estoppel theories was effectively a recovery

---

1. APA did not renew its liability policy with Ulico. It purchased a new policy from Legion Insurance Company.

2. APA had a deductible that reduced its damages to less than the full defense costs.

under the contract of insurance, thus APA was entitled to recover attorney's fees pursuant to Texas Civil Practice and Remedies Code section 38.001(8). *Id.* at 108–10. The court remanded the case for a determination of the amount of attorney's fees. *Id.* at 110.

Ulico asserts that the court of appeals erred in holding it had contractual coverage for the *Allen* suit based on either waiver or estoppel. Ulico notes that there was no evidence of promissory estoppel or reliance damages. *See Wheeler v. White,* 398 S.W.2d 93, 97 (Tex.1965). The jury charge did not contain questions as to such damages, and APA lodged no objections to the omission of those questions. APA urges that the trial court erred in disregarding the jury findings that Ulico granted an ERP during which APA gave written notice of the suit, and that Ulico agreed separately from the policy to pay defense costs for the *Allen* suit. Because its holding on the waiver and estoppel issues was dispositive, the court of appeals did not reach the issues APA urges.

We hold that Ulico's policy coverage was not expanded by either the doctrine of waiver or the doctrine of estoppel so as to bring the *Allen* claims within the policy coverage. We also hold that the trial court properly disregarded the jury findings that Ulico granted an ERP extending the policy period and that Ulico separately agreed to cover the *Allen* suit defense costs.

## II. Discussion

When Ulico received notice of the *Allen* suit on November 5, 1999, it did not have a contract of insurance in force with APA. Its policy had terminated as of October 25, 1999. Ulico's liability to APA turns on whether Ulico's actions after it received notice of suit created obligations to APA.

### A. Preservation of Error

■ At the outset we address APA's contention that Ulico failed to preserve error as to jury questions three and four, which submitted waiver and estoppel. APA argues that Ulico waived and invited error as to both doctrines because Ulico submitted the proposed questions which the trial court included in the charge. Referencing *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 94–95 (Tex.1999), Ulico responds that its complaint does not concern the form of the questions, but rather, that (1) the questions should never have been submitted because regardless of the jury's answers, its policy coverage could not be expanded by waiver or estoppel, and (2) there is no evidence to support the jury's answers to either of the questions. Ulico points out that when it requested the jury questions and instructions, it specifically stated that the theories should not be included in the charge, but that it was submitting the questions only because APA's requested questions and instructions were objectionable. Later, at the charge conference, it objected on the grounds that waiver and estoppel "cannot create coverage" where it does not otherwise exist under the policy. Further, Ulico says that it repeatedly and consistently made its position clear to the trial court through motions for summary judgment, directed verdict, and judgment notwithstanding the verdict. We agree with Ulico. Its position was made clear to the trial court and the trial court ruled against it. Ulico's actions were sufficient to preserve error. *See id.* (holding that the defendant did not invite the trial court's error in awarding attorney's fees that were not recoverable as a matter of law by requesting a limiting instruction and failing to object to submission of the question); *see also Alaniz v. Jones & Neuse, Inc.,* 907 S.W.2d 450, 451–52 (Tex.1995).

## B. Waiver and Estoppel

### 1. The Law

■ Proceeding to the merits of Ulico's complaints, we note that insurance policies are contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). As such, the rights and obligations arising from them and the rules used to construe them are those generally pertaining to contracts. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). If an insurance contract covers certain risks but the policy contains exclusions or limitations of coverage, when the insured makes a claim for loss from a covered risk, the insurer must assert any applicable exclusion or limitation to avoid liability. *See Employers Cas. Co. v. Block*, 744 S.W.2d 940, 943–44 (Tex.1988) ("According to Tex.R. Civ. P. 94, if an insurer issues a policy insuring against general hazards and the policy contains provisions limiting the coverage, the insurer must plead the limiting provisions if it intends to rely on them at trial."). But when a policy covers risks for a certain time period, the time of the event allegedly triggering coverage is a precondition to coverage and is not considered a defensive matter to be pleaded and proved by the insurer. *Id.* The insurer has neither a "right" nor a burden to assert noncoverage of a risk or loss until the insured shows that the risk or loss is covered by the terms of the policy. *Id.* Once the insured does so, then it becomes incumbent on the insurer—that is the insurer has the "right"—to assert any exclusions or limitations as affirmative defenses. *See id.*

■ In the context of issues such as those presented by this case, the doctrines of waiver and estoppel are frequently referenced together, but they are different. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478, 480 n. 5 (5th Cir.1992) (noting that the doctrines of waiver and estoppel are distinct and separate doctrines). Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right. *See In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex.2003); *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980). The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex.1996). Estoppel, on the other hand, generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit. *See, e.g., Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex.1998) ("[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations."); *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex.1997) ("Promissory estoppel generally is a defensive doctrine in that it estops a promisor from denying the enforceability of [a] promise.").

### 2. Can the Doctrines be Used to Rewrite the Policy?

This court addressed the question of whether the contractual coverage of an insurance policy can be expanded by waiver or estoppel over seventy years ago in *Washington National Insurance Co. v. Craddock*, 130 Tex. 251, 109 S.W.2d 165

(Tex. 1937). In that case, Craddock, the insured, was entitled to weekly indemnity payments if he became incapacitated from an accidental injury. *Id.* The policy specifically excepted gunshot wound injuries from coverage. *Id.* Craddock accidentally shot himself with a pistol, submitted a claim, and the insurer started paying weekly benefits. *Id.* at 165–66. After making eleven payments, the insurer stopped paying because the injury was not covered. *Id.* at 166. Craddock sued. In his pleadings Craddock acknowledged that the policy specifically excepted injuries from gunshot wounds from coverage. *Id.* at 165. Craddock claimed that he told the company's agent and filed his claim showing he was injured by a gunshot, yet the insurer paid weekly benefits. *Id.* at 165–66. The issue and this Court's answer were straightforward:

> [B]ut he alleged further that the company having paid him 11 weeks' indemnity for an accidental injury produced by a gunshot wound, had waived this condition of the policy, and was therefore bound and obligated to pay him the remaining 93 weekly installments, and was estopped from denying its liability by virtue of such waiver. He alleged also that he had gone to considerable expense in securing and preparing claims and proof of injury.
>
> ... The question presented is not whether the act of the insurance company in making payments would constitute a waiver of its right to forfeit the policy on account of some breach by the insured of its terms, but is whether a contractual liability may be created by a waiver. By its policy the insurance company did not assume any liability for the risk declared upon and no consideration moved to it after the accident for the assumption of such liability. The insured seeks to create that liability by invoking the doctrine of waiver. The

doctrine cannot be made to serve that purpose.

*Id.* at 166 (quoting *Craddock v. Wash. Nat'l Ins. Co.*, 83 S.W.2d 689, 689 (Tex.Civ. App.-Texarkana 1935)). This Court then quoted the Supreme Court of Michigan in a similar case where a claim was made after the insured was killed in war:

> [H]ere the [insurer] makes no claim of forfeiture of the contract; on the contrary, it is insisting upon the contract itself, and insisting that by its terms it did not insure the deceased when engaged in military services in time of war. To apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the [insurer] under the terms of the policy. In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make.

*Id.* (quoting *Ruddock v. Detroit Life Ins. Co.*, 209 Mich. 638, 177 N.W. 242, 248 (1920)). The *Craddock* Court quoted several additional cases with similar language and held that the doctrines of waiver and estoppel could not create a contract covering a risk not assumed by the insurer. *Id.* at 167.

Fifty years later, in *Texas Farmers Insurance Co. v. McGuire*, 744 S.W.2d 601 (Tex.1988), we considered whether estoppel could be applied to enlarge the coverage of a liability policy. Glen McGuire was involved in an accident while driving his employer's vehicle and notified his personal automobile liability insurer, Texas Farmers Insurance Company, of the accident. *Id.* at 602. James Bearden, a Texas

Farmers claims representative, took a statement from McGuire and discovered that McGuire was driving his employer's vehicle. *Id.* Bearden sent McGuire a non-waiver agreement which McGuire signed and returned. *Id.* Bearden then took another statement from McGuire which solidified Texas Farmers' position that it did not have coverage for the accident. *Id.* Texas Farmers defended McGuire under a reservation of rights that advised McGuire the policy might not afford coverage and that McGuire was at liberty to hire counsel at his own expense. *Id.* Following a jury trial, judgment was entered against McGuire. *Id.* McGuire sued Texas Farmers after it declined to pay the judgment on the ground of noncoverage. The trial court entered judgment for the insurance company, but the court of appeals reversed and rendered judgment for McGuire based on our holding in *Employers Casualty Co. v. Tilley*, 496 S.W.2d 552 (Tex.1973). *McGuire*, 744 S.W.2d at 602. McGuire argued that under *Tilley*, Bearden's failure to advise McGuire to obtain an attorney before McGuire gave his second statement estopped Farmers from denying coverage. *Id.* We rejected the argument:

> We hold that the court of appeals erred in applying the estoppel rule of *Tilley* to the facts of this case. The doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy. *Washington Nat. Ins. Co. v. Craddock*, 130 Tex. 251, 109 S.W.2d 165 (1937).

> Waiver and estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. *In other words, waiver and estoppel cannot create a new and different contract with respect to risks covered by the policy.* *Great Am. Reserve Ins. Co. v. Mitchell,*

335 S.W.2d 707 (Tex.Civ.App.-San Antonio 1960, writ ref'd).

> In *Tilley* the insurer was estopped by the actions of its attorney from asserting that the insured had forfeited policy coverage because of late notice. *The case at hand does not involve a forfeiture; instead, it involves a question of risk coverage under the contract. Because Texas Farmers' action cannot estop it from relying on the limitations of risk coverage set forth in the contract, it is not responsible for the judgment against McGuire.*

*Id.* at 602–03 (emphasis added). In *McGuire*, we mentioned the *Wilkinson* exception, but did not analyze or discuss the exception because it was not outcome-determinative. *Id.* at 603 n. 1. We do so now.

### 3. The *Wilkinson* Exception

In *Wilkinson*, Berta Wilkinson purchased a liability policy from Texas Farmers County Mutual which covered a Datsun owned by her son, Clifton. 601 S.W.2d at 521. Clifton later sold the Datsun and purchased a Ford which he was driving when he was involved in an accident. *Id.* at 521. Without raising a coverage question, Farmers paid for the property damage to the other vehicle and attempted to settle the personal injury claims of the other party. *Id.* Negotiations failed, the other party sued Clifton, and Farmers continued to try to settle the personal injury claim without raising a coverage question. *Id.* Four and one-half years after the accident, Farmers filed a declaratory judgment action seeking a declaration that it had no coverage because Clifton was not a named insured, and the Ford was not a covered vehicle. *Id.* After filing the declaratory judgment action, Farmers sent Clifton two letters: one stated that Farmers had forwarded

the suit to attorneys who would defend Clifton, and the other reserved Farmers' rights to assert that there was no coverage under its policy. *Id.* The attorneys chosen and paid by Farmers continued to represent Clifton in the liability suit. *Id.* Based on a jury verdict in the declaratory judgment action, the trial court entered judgment that the Farmers policy covered Clifton for the accident and that Farmers had a duty to defend him in the liability suit. *Id.*

The court of appeals affirmed. *Id.* at 523. It acknowledged the "well-established" rule that "the doctrines of waiver and estoppel may operate to avoid conditions that would cause a forfeiture of an insurance policy, [but] they will not operate to change, re-write or enlarge the risks covered by the policy." *Id.* at 521. But the court then stated:

> However, it follows from these general principles that, if an insurer assumes the insured's defense without obtaining a reservation of rights or a non-waiver agreement and with knowledge of the facts indicating noncoverage, all policy defenses, including those of noncoverage, are waived, or the insurer may be estopped from raising them. *Pacific Indemnity Co. v. Acel Delivery Service, Inc.*, 485 F.2d 1169 (5th Cir.1973); *Ferris v. Southern Underwriters*, 109 S.W.2d 223 (Tex.Civ.App.-Austin 1937, writ ref'd); *Automobile Underwriters' Ins. Co. v. Murrah*, 40 S.W.2d 233 (Tex. Civ.App.-Dallas 1931, writ ref'd). See: 81 A.L.R. 1326 (1932); 38 A.L.R.2d 1148

(1954); 7C Appleman, Insurance Law & Practices 4892 (1979). This rule is based on the "... apparent conflict of interest that might arise when the insurer represents the insured in a lawsuit against the insured and simultaneously formulates its defense against the insured for noncoverage." *Pacific Indemnity Co. v. Acel Delivery Service, Inc.*, supra.

*Id.* at 521–22.[3]

As indicated by the above quote, the *Wilkinson* court did not specify whether it based its decision on waiver or estoppel. Nor did it rest its decision on a determination that the insured had been prejudiced. It held that an "apparent" conflict of interest that "might" arise sufficiently justified judicial rewriting of the insurance contract to include a risk not agreed to by the parties to the contract. *Id.* at 522. The court cited several cases to support its conclusion that "it follows" from the general principles enunciated by this Court in *Craddock* "that, if an insurer assumes the insured's defense without obtaining a reservation of rights or a non-waiver agreement and with knowledge of the facts indicating noncoverage, all policy defenses, *including those of noncoverage*, are waived, or the insurer may be estopped from raising them." *Id.* at 521–22 (emphasis added).

We do not agree with *Wilkinson's* statement to the effect that "noncoverage" of a risk is the type of right an insurer can waive and thereby effect coverage for a risk not contractually assumed. As we

**3.** This court refused writ in *Wilkinson* with the notation "no reversible error." That designation meant the Court was not satisfied that the opinion of the court of appeals correctly declared the law, but that the application presented no error requiring reversal of the judgment. *See City of Dallas v. Dixon*, 365 S.W.2d 919, 922 (Tex.1963); *Commercial Standard Ins. Co. v. Marin*, 488 S.W.2d 861,

864 (Tex.Civ.App.-San Antonio 1972, writ ref'd n.r.e.) (stating that the notation "refused, no reversible error" "merely means that the application for writ of error presents no error which requires reversal ... [which may be] because the application for writ of error does not present to the Supreme Court the error which renders the judgment incorrect").

said in *Block*, 744 S.W.2d at 943–44, the insurer does not bear the burden of showing that it does not have a policy in place to cover a particular risk; the insured bears the burden to show that a policy is in force and that the risk comes within the policy's coverage. An insurer's actions can result in it being estopped from refusing to make its insured whole for prejudice the insured suffers because the insurer assumed the insured's defense, but estoppel does not work to create a new insurance contract that covers a risk not agreed to by the contracting parties. *See McGuire*, 744 S.W.2d at 602–03. Thus there is no "right" of noncoverage that is subject to being waived by the insurer, even by assumption of the insured's defense with knowledge of facts indicating noncoverage and without obtaining a valid reservation of rights or non-waiver agreement. Nor do the cases cited by *Wilkinson* support its conclusion otherwise, as the following review of them shows.

To begin with, the *Wilkinson* court failed to state the complete basis for the rule in its quotation from *Acel. See Wilkinson*, 601 S.W.2d at 521–22. Although the quoted language seems to indicate otherwise, the court in *Acel* did not hold only that there was an apparent conflict that might prejudice the insured; it determined that the insurer caused actual prejudice to its insured. 485 F.2d at 1175–76. The quote from *Acel*, in context, is:

> The theory underlying this exception is based upon the apparent conflict of interest that might arise when the insurer represents the insured in a lawsuit against the insured and simultaneously formulates its defense against the insured for noncoverage. *For estoppel to prevent the assertion of a defense of noncoverage in accordance with this exception, there must be a showing of prejudice. As to the application of waiver, the proponent must demonstrate a voluntary relinquishment of a known right* .... Because the district court disposed of this case on the basis of estoppel, we are not concerned with the application of waiver in this appeal.

*Id.* at 1173 (emphasis added) (citations omitted).

*Acel* involved a declaratory judgment action to determine liability coverage for an airplane accident. *Id.* at 1171. The trial court and court of appeals held that the incident in question was not covered by the policy. The court found that Pacific Indemnity Company was estopped from denying coverage for the judgment, however, because it assumed defense of the suit without a valid non-waiver agreement or reservation of rights when it had knowledge of facts indicating possible lack of coverage and the insured was prejudiced. *Id.* at 1176. The court determined the insured was prejudiced in several ways: (1) by Pacific's failure to notify the insured of possible lack of coverage so it could take measures to defend itself, (2) by the manner in which the defense was conducted before Pacific withdrew, (3) because the withdrawal took place just before trial, and (4) because of the apparent conflict of interests that arose when Pacific assumed the defense with doubts as to coverage and without notifying the insured of the conflict. *Id.* at 1175–76. The court noted the similarity of the facts to those in *Tilley*, in which this Court held that an insured was prejudiced as a matter of law when an attorney hired by the insurer simultaneously built a policy defense for the insurer and thus the insurer was estopped from asserting a late-notice defense under the policy. *Id.* at 1176; *see Tilley*, 496 S.W.2d at 561.

*Wilkinson* also cited *Ferris v. Southern Underwriters*, 109 S.W.2d 223 (Tex.Civ. App.-Austin 1937, writ ref'd), and *Automo-*

*bile Underwriters' Insurance Co. v. Murrah,* 40 S.W.2d 233 (Tex.Civ.App.-Dallas 1931, writ ref'd). However, neither *Ferris* nor *Murrah* analyzed the issue of whether a liability policy's coverage could be expanded by waiver or estoppel to cover a risk not originally covered; they merely cited prior cases for the rule and applied it to situations in which the accident for which suit was brought was a covered risk.

In *Murrah,* an indemnity policy issued by Automobile Underwriters to C.E. Adair provided that Automobile Underwriters would have no liability for accidents or injuries occurring if the driver was intoxicated. 40 S.W.2d at 233. Automobile Underwriters exclusively controlled Adair's defense and did not withdraw from the case until the court rendered against Adair even though it had notice five months before trial that the driver may have been under the influence of alcohol at the time of the accident. *Id.* at 234. The court concluded that:

> [W]hen appellant, with full knowledge of the issues to be tried in the suit against Adair, took exclusive control and management of Adair's defense in such suit, introduced all of the evidence that was before the court on such defense, filed all of the pleadings that were filed for Adair, examined and cross-examined all witnesses, it thereby *waived the defensive clauses* in the policy of insurance.

*Id.* at 235 (emphasis added).

The court cited as controlling authority this Court's decision in *American Indemnity Co. v. Fellbaum,* 114 Tex. 127, 263 S.W. 908 (1924), where this Court held that under an indemnity policy, the insurer, by defending the insured, was liable for a judgment against the insured under the contract even though the insured had not paid the judgment:

> It is true that the provision does not say that if the indemnity company fails in its

defense, and judgment is rendered against the assured, it will pay the judgment; but we believe that this was the purpose and intention of the parties when the contract was made.

*Id.* at 909–10. In *Fellbaum,* this Court did not address whether policy coverage could be judicially expanded to encompass a risk not agreed to by the parties; it held that the policy language required the insurer to pay the judgment based on the policy language itself, that is, the agreement the parties made. *Id.* In short, neither *Murrah* nor the case it relies on support the rule that a liability insurance policy's risk coverage can be expanded by waiver or estoppel.

The court in *Wilkinson* also cited *Ferris,* 109 S.W.2d 223, which also relied on *Murrah.* In *Ferris,* Southern Underwriters issued an *indemnity* policy to G.A. Carter requiring Southern to both defend Carter from suits and indemnify him for any judgments he paid. *Id.* at 224. In a suit to determine whether Southern was liable for a judgment entered against Carter, the trial court held that because the policy did not cover the injuries at issue, the plaintiffs had no right of action on the contract, and Southern did not become liable on the contract by defending Carter. *Id.* at 225. The court of appeals reversed and rendered judgment for the plaintiffs. *Id.* at 226. The court held that the contract did in fact cover the injuries at issue. *Id.* at 225. The court then concluded that the trial court erred in holding that Southern did not become liable on its contract by appearing and having the suit defended by its attorney. *Id.* at 226. The court said:

> The rule is settled in this state that "a defense by the insurer, in an action on the policy, that a certain claimed liability is not within the policy terms, is waived when it assumes absolute control, under

the terms of its contract with insured, of the action brought against the insured to recover damages."

*Id.* (quoting *Am. Indem. Co. v. Fellbaum,* 225 S.W. 873, 874 (Tex.Civ.App.-San Antonio 1920), *aff'd,* 114 Tex. 127, 263 S.W. 908 (1924)). The *Ferris* court went on to cite *Murrah; Dallas Coffee & Tea Co. v. Williams,* 45 S.W.2d 724 (Tex.Civ.App.-Dallas 1931, writ dism'd w.o.j.); *Leap v. Braziel,* 93 S.W.2d 1213 (Tex.Civ.App.-San Antonio 1936), *modified,* 121 S.W.2d 334 (Tex.1938); and two A.L.R. articles. As previously discussed, *Murrah* simply does not support the statement that the rule "is settled in this state." *Murrah* involved waiver of defensive provisions in an indemnity policy, but did not hold that waiver expanded the risks covered. Further, neither *Dallas Coffee* nor *Leap* involved the question of expanding risk coverage of liability policies by assuming the defense of the insured.

In *Dallas Coffee,* 45 S.W.2d 724, Automobile Underwriters Insurance Company asserted on appeal that as a liability insurer, it had been improperly joined in a suit against its insured and judgment against it was improper. *Id.* at 727–28. It did not contend the accident was not covered by its policy. The court of appeals affirmed the judgment against Automobile Underwriters, holding that if an insurer takes control of a suit against an insured, as Underwriters did, any judgment against the insured becomes, "in legal effect, a judgment against the insurer." *Id.* at 728. As can be seen, the court did not address risk coverage and whether a policy's coverage can be expanded by waiver or estoppel because the company did not assert a "no coverage" position.

Nor was a question presented as to whether risk coverage of a liability insurance policy could be expanded by waiver or estoppel in *Leap,* 93 S.W.2d 1213. Ma-

ryland Casualty Company was originally impleaded as a defendant in a suit against its insured but was dismissed upon its own motion. *Id.* at 1216. Maryland's attorneys defended its insured in the suit. *Id.* The trial court refused to enter judgment against Maryland. *Id.* at 1216–17. The court of appeals reversed as to Maryland on two bases: Maryland's control of the defense and the policy language. *Id.* at 1218–19. Citing *Murrah* and *Fellbaum,* among other authorities, the appeals court said

[T]he rule now prevails in this and other jurisdictions that where an insurance company, in pursuance of the terms of such contract, takes charge of and manages and contests the suit against the assured until the recovery of final judgment against him thereon, it thereby becomes so connected with the litigation, by its interest in the result and participation therein, as to be bound by such judgment, and is estopped to deny its liability thereon.

*Id.* at 1218. This Court did not approve the court of appeals' language, but rather, reversed the judgment against Maryland: "[Maryland] Casualty Company was in no sense a party to the suit and the Court of Civil Appeals was wholly without jurisdiction over it. The judgment as to it was therefore a nullity." *Leap v. Braziel,* 121 S.W.2d 334, 336 (Tex.1938).

Finally we reach the court of appeals' opinion in *Fellbaum,* 225 S.W. 873, which seems to be the seminal Texas case for the proposition that waiver or estoppel can be used to rewrite a policy and include risks not agreed to by the parties. *Fellbaum* involved a policy similar to those in *Ferris* and *Murrah* that called on the company to defend its insured and to indemnify its insured for judgments the insured paid. *Id.* at 873. The court of appeals did not construe the policy language to require

American Indemnity to discharge its insured's liability for the judgment against it if the insured had not paid the judgment. Rather, the court held that American Indemnity was liable on its policy because it controlled defense of the suit. *Id.* at 874. The court did not address whether prejudice had been shown by the insured:

> *A defense by the insurer, in an action on the policy, that a certain claimed liability is not within the policy terms, is waived when it assumes absolute control, under the terms of its contract with insured, of the action brought against the insured to recover damages.* When appellant assumed the exclusive management and control of the suit for damages ..., as it was empowered to do under the terms of the policy, it became unconditionally liable for the amount of the judgment rendered....
>
> ....
>
> No reservations were made as to its liability by appellant when it assumed control of the case. The judgment is in effect one against appellant as well as against Carr, and it must pay off and discharge the judgment. There are other authorities that sustain this ruling.... *We have seen no Texas case that passes on the question.*

*Id.* at 874 (emphasis added) (citations omitted). While this Court affirmed the court of appeals' judgment, it did not do so on the basis of waiver or estoppel. Rather, it did so by holding the insurer was directly liable to the judgment creditor based on the policy language. *Fellbaum,* 263 S.W. at 909–10.

The court of appeals' decision in *Fellbaum* and the cases citing it underlie general statements such as that made in *Wilkinson* that the doctrines of waiver and estoppel preclude an insurer from asserting the "defense of noncoverage" if the insurer assumes the defense of its insured without a valid reservation of rights or non-waiver agreement. The cases cited in *Wilkinson,* however, do not support its conclusion.

#### 4. Prejudice

Justification for the *Wilkinson* rule typically is noted as the *"apparent* conflict of interest that *might* arise when the insurer represents the insured in a lawsuit against the insured and simultaneously formulates its defense against the insured for noncoverage." *Wilkinson,* 601 S.W.2d at 522 (emphasis added). Under some circumstances, insurers who take control of their insured's defense without a valid reservation of rights or non-waiver agreement can and should be prevented from denying benefits that would have been payable had the claim been covered because the insured is actually prejudiced by the insurer's actions. *See, e.g., Acel,* 485 F.2d 1169. But the possibility that an apparent conflict of interest might arise under these circumstances is insufficient justification for judicially rewriting the parties' agreement.

*Tilley,* 496 S.W.2d 552, a case referenced by the court of appeals in the case now before us as well as by the *Wilkinson* court, offers an example of the former situation—one in which actual prejudice occurs. In *Tilley,* we discussed the doctrines of waiver and estoppel in connection with an undisclosed conflict of interest between an insurer and its insured. There, Employers Casualty Company simultaneously defended its insured, Tilley, and formulated a late-reporting coverage defense. *Id.* at 554. Employers then sought a declaratory judgment that Tilley violated provisions of the policy requiring prompt notice of an accident and thus, this violation relieved Employers of any obligation under its policy. *Id.* Neither Employers nor the defense attorney notified Tilley of

the specific policy defense being developed by Employers, nor did the defense attorney notify Tilley of the conflict of interest created by the attorney simultaneously representing Tilley, obtaining and furnishing evidence to Employers that was detrimental to Tilley's interests, and advising Employers as to its late notice defense. *Id.*

In the declaratory judgment action, Employers conceded that it had coverage for the accident unless Tilley violated a policy provision requiring Tilley to give Employers notice of the accident "as soon as practicable." *Id.* at 555. The trial court granted Tilley's motion for summary judgment in which he asserted waiver and estoppel theories related to Employer's late notice defense. *Id.* at 554. We discussed the "serious questions involving legal ethics and public policy" in the foregoing context. *Id.* at 557. We held that Tilley had been prejudiced and Employers was estopped to deny coverage:

> We think prejudice to Tilley ... has been shown as a matter of law.
>
> Under the undisputed facts and circumstances of this case, it would be untenable to permit Employers to disclaim liability for the defense of Tilley in the [personal injury] suit on account of the late notice defense. Its conduct being violative of the guiding principles and public policy heretofore discussed, we hold that Employers is estopped as a matter of law from denying the responsibilities under its policy for defense of the [personal injury] suit.

*Id.* at 561.

We discussed the doctrines of both waiver and estoppel in *Tilley*, but we did not hold that Employers waived its late notice defense. We determined that Tilley had been prejudiced and held that Employers was estopped from asserting the late notice forfeiture provision of its policy. *Id.*

The question was not presented as to whether either the doctrine of waiver or estoppel can expand the coverage of a liability policy to encompass a risk or period of time for which no premiums were paid. Nor did we hesitate to label the situation as an actual conflict of a most serious nature, not an "apparent conflict of interest that might arise." *See Wilkinson*, 601 S.W.2d at 522.

When an insurer's defense of or controlling the defense of the insured prejudices an insured, as happened in *Tilley* and *Acel*, the insurer cannot escape liability for the detriment its actions cause its insured. In those cases, the insurer was estopped from refusing to pay the damages its actions caused, but there was no rewriting of the insurance contract. We think *Tilley's* rule, ethical rules applicable to attorneys defending insureds, and the doctrine of estoppel all work to protect an insured without the necessity of remolding the doctrines of waiver and estoppel to create an anomaly in the law by judicially rewriting agreements between insurers and insureds.

*Tilley* condemned a situation in which a defense attorney provided by an insurance company has divided loyalty that results in prejudice to an insured. It goes without saying that an attorney defending an insured has the obligation to fully disclose to the insured conflicts of interest, whether because of the attorney's relationship with the insurer or otherwise. That obligation is independent of the insurer's issuing a valid reservation of rights or obtaining a non-waiver agreement. We fail to see how the insured is not protected from prejudice by the rule of *Tilley* or a variation of that rule. In contrast, the *Wilkinson* rule would afford the insured more contractual coverage than the policy provided, even if the insurer provides a perfect defense at no cost to the insured and the insured suffers no prejudice. The

question on which the insurer's liability should turn is whether an insured is prejudiced as a result of the conflict, an inadequate or absent disclosure, or other actions of the insurer. *See, e.g., Acel,* 485 F.2d at 1175–76 (holding, in part, insured was prejudiced by the manner in which it was defended by the insurer); *In re Gen. Elec. Capital Corp.,* 203 S.W.3d at 316; *Jernigan,* 111 S.W.3d at 156; *Bocanegra,* 605 S.W.2d at 851; *Tilley,* 496 S.W.2d at 559. Such issues seem to us to be no more subtle or difficult to prove than other issues of damages from breach of the attorney-client or insured-insurer relationship. In sum, if an insurer defends its insured when no coverage for the risk exists, the insurer's policy is not expanded to cover the risk simply because the insurer assumes control of the lawsuit defense. But, if the insurer's actions prejudice the insured, the lack of coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains because of the insurer's actions.

### 5. The Jury Charge

■ The trial court submitted the "*Wilkinson* exception" to the jury by two separate questions. Jury question three submitted APA's estoppel theory:

Is Ulico estopped from asserting that the APA's claim for attorney's fees and expenses incurred in defending the Allen Action is not covered by the Policy?

Jury question four submitted the waiver theory:

Has Ulico waived its right to assert that the APA's claim for attorney's fees and expenses incurred in defending the Allen Action is not covered by the Policy?

Both questions were accompanied by definitions and instructions, including an instruction that waiver and estoppel "generally cannot be used to create insurance coverage when none exists under the terms of an insurance policy. But, in certain circumstances, [they] may expand the coverage provided under an insurance policy." In *Craddock* and *McGuire,* we said neither doctrine could effect a change in the policy's coverage. *Craddock,* 109 S.W.2d at 166–67; *McGuire,* 744 S.W.2d at 602–03. We adhere to that position. Changing a policy's coverage to encompass risks otherwise not covered must be by contractual means. Such means could include, for example, the manner in which Ulico and APA agreed to twice extend the policy period: APA sought a policy period extension, Ulico agreed, APA paid the specified premium, and Ulico issued a written endorsement changing the policy period.

Jury questions three and four, which submitted the theories of expanding Ulico's policy coverage by waiver and estoppel, are immaterial and cannot support a judgment against Ulico. Because we determine that Ulico's policy coverage could not be expanded by waiver or estoppel, we do not reach its assertions that even if *Wilkinson* properly stated the law, Ulico still must prevail because there was no evidence that it either assumed control of APA's defense or that APA was prejudiced by its actions.[4]

### C. Judgment Notwithstanding the Jury Verdict

APA urges that if judgment in its favor is not sustained on the waiver and estoppel

4. However, we note in passing that, as discussed below, there was no evidence APA suffered detriment because of Ulico's actions. Also, Ulico acknowledges that another element of the *Wilkinson* exception is it did not obtain an effective reservation of rights. Ulico did not address whether its reservation of rights was effective to preserve its right to deny coverage.

findings, judgment should nevertheless be affirmed on the basis of the jury's findings that Ulico granted APA an ERP and that Ulico and APA agreed, separate from the policy, that Ulico would reimburse APA for the cost of defending the *Allen* suit. The trial court granted Ulico's Motion for Judgment Notwithstanding the Jury Verdict as to both questions and jury findings.

The court of appeals did not address the trial court's actions in disregarding the jury's answers to questions one and two. We will consider the issues rather than remanding for review by the court of appeals. *See* TEX.R.APP. P. 53.4.

### 1. Extended Reporting Period

 Jury question one asked whether Ulico agreed to grant APA an ERP under the policy, during which APA reported the claim. APA first contends that the trial court could only disregard the jury's "yes" answer if no evidence supported the answer, and that Ulico's actions were evidence that Ulico impliedly granted an ERP.[5] *See* TEX.R. CIV. P. 301 (providing that a court may disregard a jury finding on a question that has no support in the evidence). APA bases its position on this section of the policy providing that Ulico could grant an ERP if APA decided not to renew coverage:

Section II. EXTENDED REPORTING PERIOD

... If the insured terminates or declines to accept renewal [of the Policy], [Ulico] may, if requested, at its sole option, grant an Extended Reporting Period.

APA urges that the referenced policy language does not require Ulico's grant of an ERP to be in writing, and that Ulico's two letters together with its internal computer entries are some evidence that an ERP was both requested and granted. Ulico replies, in part, that APA is wrong in its position that the policy does not require a writing to grant an ERP. Ulico specifically references paragraph F of the GENERAL CONDITIONS section of the policy:

F. ALTERATION & ASSIGNMENT

No change or modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy signed by an authorized representative of [Ulico].

Ulico argues that its position is supported by (1) Bowers's testimony that she did not consider APA to have requested an ERP, she did not grant one, and her letters stating that defense costs were covered by the policy were no more than coverage determination mistakes because she did not realize that the policy had expired

---

**5.** In urging that the trial court erred, APA points specifically to evidence that (1) Ulico's internal computer files referenced "EXTENDED REPORTING PERIOD" next to the word "Coverage" and another similar entry; (2) APA's agent was notified on October 26, 1999 that the policy expired on October 25, then APA's agent submitted a claim for the *Allen* suit specifying the October 25 policy expiration date and a late reporting date of November 4, 1999; (3) after receiving the claim, Ulico's underwriter advised Ulico and the APA by letter dated November 16, 1999 that the policy expired on October 25 and APA's Notice of Loss form was received after that date; (4) Ulico internally noted the issue of late reporting and directed Bowers to question the delayed reporting when the claim was assigned to her; (5) APA and Ulico exchanged letters in December 1999 and in its next letter in March 2000, Ulico did not object to the timing of the notice of the claim, did not deny coverage for late reporting, and stated that defense costs were afforded to APA under the policy; and (6) in April 2001, Ulico again wrote APA without objecting to the timing of the notice of the claim, denying coverage, or reserving Ulico's rights, and specifically stated that Ulico had agreed to reimburse APA for reasonable and necessary defense expenses.

before the claim was reported; and (2) testimony of an independent computer company employee that he made computer entries of "EXTENDED REPORTING PERIOD" and "coverage" in October 2001 to "fool" the computer as part of converting Ulico's files to a computer system because without such notations, the system would not allow the entry of a claim that was outside the policy period.

We agree with Ulico. The policy expressly required written notice of a claim, which is what APA provided. The written notice of a claim did not request a period of time for an ERP or specify that an ERP was being requested. The policy required a request for an ERP under these circumstances. Ulico's written responses did not grant any period beyond the policy period during which a claim could be reported and still comply with coverage requirements.[6]

APA correctly notes that the applicable language of the EXTENDED REPORTING PERIOD section does not require a written request from the insured. But that language cannot be read separately and in isolation from the GENERAL CONDITIONS requirement that no change or modification of the policy shall be effective except when made by written endorsement signed by an authorized representative of the company. *See Forbau,* 876 S.W.2d at 133 (noting that we consider the contract as a whole, read all parts together to ascertain the agreement of the parties, and give effect to each part of the contract). The EXTENDED REPORTING PERIOD language specified the process by which an ERP could be requested by an insured or granted by Ulico, but the GENERAL CONDITIONS specified when an ERP would be effective: when made by

written endorsement signed by an authorized representative of the company. We agree with the trial court that no evidence supports the finding that APA's claim was made during a period for which Ulico granted an ERP.

APA also claims the trial court erroneously failed to apply a "no-evidence" standard of review in disregarding the jury's answer, pointing to the trial court's conclusion of law that "the evidence does not support" APA's claim that an ERP was granted. APA claims this indicates that the trial court improperly disregarded the jury's finding based on insufficient rather than no evidence. But even if the trial court applied the wrong standard in reaching its decision to disregard the jury's answer, Ulico is entitled to a no-evidence review because it asserted in its Motion for Judgment Notwithstanding the Verdict and its cross-issues that no evidence supported the jury finding. The trial court properly granted judgment notwithstanding the verdict on that ground.

### 2. Separate Agreement

 Jury question two asked whether Ulico and APA agreed, separate from the policy, that Ulico would reimburse APA for costs of defending the *Allen* suit. The trial court granted Ulico's motion to disregard the jury's affirmative answer. The trial court entered Findings of Fact and Conclusions of Law and specified that they were being entered regarding the issue of attorney's fees. Conclusions of Law numbers five and six addressed the "separate agreement" question:

5. To the extent the APA contends that correspondence from Ulico to the APA after the end of the Policy period

---

**6.** Because there was no writing purporting to endorse the policy by granting an ERP, we need not and do not address the question of

whether Bowers had authority to execute such an endorsement.

can be construed as a supplemental agreement by Ulico to cover a claim which was not otherwise covered by the Policy, there was no consideration for the alleged agreement.

6. The APA and Ulico did not enter into an agreement, separate from the Policy, for Ulico to reimburse the APA for its attorney's fees incurred in the Allen Action.

Apparently assuming that these conclusions apply to the entirety of the trial court's judgment, APA urges that the trial court erred in its conclusions. Assuming, without deciding, that the trial court's findings and conclusions apply to the entirety of its final judgment as opposed to only that part of the judgment denying recovery of attorney's fees, we conclude that APA's contentions are without merit.

APA claims the trial court erred in concluding there was no consideration for a supplemental agreement because Ulico had the burden of proof on the issue of lack of consideration and waived the defense by failing to (1) file a verified pleading regarding no consideration, and (2) request a jury question on and obtain a finding as to lack of consideration. First, we address APA's contention that Ulico waived the issue by failing to file a verified pleading. Ulico asserts that a verified denial was not required because the April 2001 letter from Bowers was not a "written instrument upon which a pleading is founded" within the meaning of Texas Rule of Civil Procedure 93(9). Ulico also asserts that APA waived any objection regarding the lack of pleading because APA failed to object to testimony that it did not pay for a separate agreement and the issue was tried by consent. We agree that APA failed to preserve error when it failed to object to testimony regarding the lack of an additional premium. *See* TEX.R.APP. P. 33.1.

As to the merits, our statement in *Federal Sign v. Texas Southern University*, 951 S.W.2d 401 (Tex.1997), guides us in determining whether there was consideration for the alleged separate agreement. In *Federal Sign* we said:

Consideration is a bargained for exchange of promises. Consideration consists of benefits and detriments to the contracting parties. The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments.

*Id.* at 408–09 (citations omitted). APA asserts that the letter from Bowers dated March 1, 2000 was an "agreement separate from the Policy," and that the separate agreement was confirmed by the April 25, 2001 letter. APA cites *Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex.1998), for the proposition that surrendering legal rights represents valid consideration for an agreement. APA says that it accepted Ulico's separate promise to pay defense costs by continuing to pay for its defense, by cooperating with Ulico, and by disclosing confidential, privileged information to Ulico in reliance on Ulico's promise. APA cites as evidence the April 25, 2001 letter from Bowers to APA's attorney and the May 3, 2001 response by APA's defense attorney Hoffman, enclosing the attorney's evaluation form and copies of the firm's billings. There is no evidence, however, that Ulico received any benefit from any "continued" payments of costs by APA or APA's "cooperation." Nor is there evidence that APA would have at any time discontinued paying for its defense absent Bowers's letters, or that APA's "cooperation" with Ulico or Hoffman's letter dated May 3, 2001 constituted any detriment to APA so as to constitute consideration.

In *Northern Natural Gas,* we noted that "[c]onsideration is defined as 'either a ben-

efit to the promisor or a loss or detriment to the promisee. Surrendering a legal right represents valid consideration.'" *Id.* at 607 (quoting *Receiver for Citizen's Nat'l Assurance Co. v. Hatley,* 852 S.W.2d 68, 71 (Tex.App.-Austin 1993, no writ)). We held that Northern's contractually binding itself to deliver all the natural gas it received under certain contracts was the surrendering of a legal right and constituted consideration. *Id.* In contrast to the situation in *Northern Natural Gas,* the May 3, 2001 letter from APA's defense attorneys disclosed that for all practical purposes, the case was dormant: discovery had closed, the parties were awaiting a decision from the court on their motions for summary judgment, and no trial date had been set. APA did not undertake any obligation nor did it surrender any legal right by means of Hoffman's letter. The letter merely submitted bills for payment, gave a factual recitation of the case progress, estimated a fifty-percent chance of success if the case were to be tried, and stated that "[i]f we prevail on summary judgment, expenses could be capped at the present amount." Furthermore, Hoffman testified that his firm did not take or fail to take any action in defending APA because of Bowers's letters. APA alleges, but does not explain how, merely submitting its attorneys' bills and expenses was a detriment under these facts. We agree with the trial court that there was no evidence of consideration for an alleged "separate agreement" that Ulico would pay APA's defense costs, and there was no need for Ulico to obtain a jury finding of no consideration.

Having determined that there was no consideration for an alleged agreement, we need not and do not consider APA's contention that the trial court erred in concluding there was no separate agreement in the first place.

## III. Conclusion

Jury questions three and four were immaterial and could not form the basis of a judgment against Ulico. The trial court correctly rendered judgment notwithstanding the verdict in favor of Ulico as to jury questions one and two. There is no basis for a judgment against Ulico and the judgment of the court of appeals must be reversed. Judgment is rendered that APA take nothing.

Chief Justice JEFFERSON filed a concurring opinion.

Chief Justice JEFFERSON, joined by Justice O'NEILL, concurring.

As I understand the Court's opinion, the Court (1) resolves the tension between our holdings in *Craddock* and *Ferris* by making it clear that while estoppel cannot create coverage, the benefits that would have been paid had the insurer not denied coverage remain the appropriate measure of damages; and (2) requires that the insured show prejudice in order to recover those damages. *See* 262 S.W.3d 773, 785 ("Under some circumstances, insurers who take control of their insured's defense without a valid reservation of rights or non-waiver agreement can and should be prevented from denying benefits that would have been payable had the claim been covered because the insured is actually prejudiced by the insurer's actions."). With this understanding, I join the Court's opinion.

In *Washington National Insurance Co. v. Craddock,* we held that the doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy. *Craddock,* 130 Tex. 251, 109 S.W.2d 165, 166–67 (1937). *Craddock* was decided October 20, 1937. *Id.* at 165. One month later, we refused the writ of error in *Ferris v. Southern Underwriters,* in which the court of civil appeals

stated, "[t]he rule is settled in this state that 'a defense by the insurer, in an action on the policy, that a certain claimed liability is not within the policy terms, is waived when it assumes absolute control, under the terms of its contract with insured, of the action brought against the insured to recover damages.'" *Ferris*, 109 S.W.2d 223, 226 (Tex.Civ.App.-Austin 1937) (quoting *Am. Indem. Co. v. Fellbaum*, 225 S.W. 873, 874 (Tex.Civ.App.-San Antonio 1920), *aff'd*, 114 Tex. 127, 263 S.W. 908 (1924)), *writ ref'd*, 128 Tex. 669 (Nov. 24, 1937).

The tension inherent in those holdings is explained, I think, by the unique concerns involved when an insurer assumes control over its insured's defense without reserving the right to later deny coverage. As other Texas courts have noted, "[w]e have found no case, nor has either party cited a case, in which the general rule (that coverage cannot be created by waiver or estoppel) was applied where there was an assumption of the insured's defense by an insurer. All of the cases that we have found applying the general rule involved entirely different situations." *State Farm Lloyds v. Williams*, 791 S.W.2d 542, 551 (Tex.App.-Dallas 1990, writ denied) (citations omitted); *see also Denison Custom Homes, Inc. v. Assurance Co. of Am.*, No. V-03-24, 2006 WL 1517495, 2006 U.S. Dist. LEXIS 34930, at *20–21 (S.D.Tex. May 31, 2006) ("Just as *Ferris* and *Murrah* do not address the general rule against creating coverage in equity, neither *Craddock* nor *Ruddock* address the situation of a defense willingly assumed and then rejected by an insurer. The clear implication is that these cases did not contemplate their interdependence.... Cases contemporary to *Ferris* and *Craddock* and treatment of the waiver rule in secondary sources indicate that the *Wilkinson* exception did not follow from the general rule, but stated a separate principle that developed independently.").

Nor is this distinction unique to Texas law. As noted in a leading insurance treatise:

> Although the doctrine of waiver and estoppel cannot generally be used to create insurance coverage where none exists under [the] terms of the policy, an exception to the rule exists where a liability insurer assumes the insured's defense with knowledge of facts indicating noncoverage and without declaring a reservation of rights or obtaining a non-waiver agreement in which case all policy defenses, including those of noncoverage, are waived.

14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 202.54 (2005) [hereinafter COUCH] (citations omitted); *see also* R.D. Hursh, Annotation, *Liability Insurance: Insurer's Assumption of or Continuation in Defense of Action Brought Against the Assured as Waiver or Estoppel as Regards Defense of Noncoverage or Other Defense Existing at Time of Accident*, 38 A.L.R.2d 1148 (1954).

The general rule, and the rule established in our precedent, is that "[t]he courts will not allow an insurer to lull an insured into a belief that coverage exists in a situation where it does not, or even where the insurer simply believes it does not," COUCH at § 202.54, and thereby induce the insured to give up the right to manage its own defense. If the insurer is able to later deny liability, however, the basis for its assumption of the defense is undermined, and thus many courts have bound insurers to provide coverage in these cases without a further showing of harm, either because prejudice is conclusively presumed, or, similarly, because "the loss of the right of the insured to control and manage the defense is itself prejudicial." COUCH at §§ 202.67–68 (collecting cases). Other courts, however,

have required a further showing of prejudice under the *Ferris/Wilkinson* rule. *See Williams*, 791 S.W.2d at 553 ("unless a conflict of interests or other harm is clear and unmistakable, we are inclined to the view that the insured must show how he was harmed").

If the insurer defends without reserving its rights, and the insured shows prejudice, the insured is entitled to recover the benefits that would have been due under the policy. To that extent, it matters little whether a court says coverage was created or that the benefits are those that would have been payable had there been coverage; a rose by any other name would smell as sweet.