**Opinion issued February 28, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00800-CV

———————————

**ABUDU KADIRI ALLI, Appellant**

**V.**

**WACHOVIA BANK, N.A. AS TRUSTEE, SUCCESSOR BY MERGER TO FIRST UNION NATIONAL BANK, AS INDENTURE TRUSTEE, BAYVIEW LOAN SERVICING, LLC AND INTERBAY FUNDING, LLC, Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2008-70936**

---

## MEMORANDUM OPINION

Abudu Kadiri Alli appeals from a take-nothing judgment rendered after a

bench trial on his claims against Wachovia Bank, N.A. as Trustee, Successor by

Merger to First Union National Bank, as Indenture Trustee, Bayview Loan Servicing, LLC, and Interbay Funding, LLC.[1] We affirm the judgment.

## Background

Alli owned a parcel of land on South Post Oak Road in Houston. To raise capital for his automotive business operating on the same property, Alli obtained a loan from Interbay in late 2001. He executed a promissory note for a principal amount of $187,200 and a deed of trust pledging the property as collateral. The deed of trust provides that notices of default and foreclosure should be sent to a designated address on Ashford Lakes in Sugar Land. Alli subsequently changed the notice address to the address for the property itself.

Alli made payments on the note through March 2007 but thereafter made no further payments. A couple of months later, Bayview, which was responsible for servicing the loan, sent notices of default to the address for the property and to the address on Ashford Lakes. Around that time, Alli contacted Bayview about the possibility of obtaining a discounted payoff. Initially, Alli engaged a financial-workout professional, Roger Dill, to represent him in reaching a payoff agreement.

---

[1] The defendants' amended answer identifies the defendant parties as "Wachovia Bank, N.A., as Trustee, Successor by Merger to First Union National Bank, as Indenture Trustee, Bayview Loan Servicing, LLC formerly Interbay Funding, LLC, (incorrectly sued as Bayview Loan Servicing, LLC and Interbay Funding, LLC) . . . ." The amended answer also states that "Bayview Loan Servicing LLC, formerly Interbay Funding LLC, is the servicer of the Note for the benefit of Wachovia Bank, N.A. successor by merger with First Union National Bank, as Trustee . . . ."

2

Dill corresponded with Bayview and informed Alli that he would prepare a lump sum payoff offer.

By September, Alli had terminated Dill and engaged a Texas-licensed attorney, Tekenari ("Tex") Wariboko. One of Alli's motivations for engaging Wariboko was that he was preparing to take an extended trip to Nigeria and wanted to ensure that someone was handling the payoff matter with Bayview. David Cortes, a Bayview asset manager assigned to the loan account, required Alli to transmit an authorization letter indicating Wariboko's authority. Cortes instructed how such a letter should be worded. Alli drafted the required authorization letter, which stated in relevant part:

<u>RELEASE OF INFORMATION</u>

RE: LOAN # 200010471

Dear Mr. Cortes:

I hereby authorize the release of any and all information pertaining to the above referenced loan to Tex A. Wariboko, Esq., Attorney at Law, the law firm of Wariboko & Associates, P.C. Mr. Wariboko may be reached at 713-772-[####] [Fax # (713) 981-[####])].

After receiving the authorization letter, Cortes spoke telephonically with Wariboko about the possibility of a discounted payoff. Cortes faxed to Wariboko a financial request letter detailing the information that Bayview needed before considering a payoff offer.

3

In January 2008, Wariboko called Cortes to inform him that a payoff offer was forthcoming. He then sent a letter addressed to Cortes proposing a discounted payoff amount of $50,000. Through further calls with Bayview in February, Wariboko learned that Cortes was no longer handling the loan account. Neither Wariboko nor Alli ever received a response from Bayview regarding the payoff offer.

In February, Bayview sent notices of acceleration and non-judicial foreclosure to the address on Ashford Lakes (as listed in the deed of trust) and to the address for the property on South Post Oak Road (as Alli had previously designated). The notices indicated that the property would be foreclosed upon on March 4. No notices were sent to Wariboko, and Bayview did not otherwise inform him of the impending foreclosure. IB Property Holdings, LLC—which has the same address as Bayview and Interbay—purchased the property at the foreclosure sale on March 4 and subsequently conveyed title to Wachovia.

Alli sued Wachovia, Bayview, and Interbay for breach of contract, promissory estoppel, and negligent misrepresentation. In addition to monetary damages, he requested the imposition of a constructive trust on the property. The defendants responded with a general denial, affirmative defenses, special exceptions, and a counterclaim for the deficiency on the loan and other damages. Alli, as counter-defendant, filed a general denial and other affirmative defenses.

During the bench trial, both sides presented evidence concerning Alli's claims; the counterclaims, however, were not pursued. The court rendered judgment that Alli take nothing by his claims. Alli filed a request for findings of fact and conclusions of law, which the court denied as untimely. He subsequently filed a motion for new trial, which was overruled by operation of law. Alli timely filed a notice of appeal.

### Standard of Review

In a nonjury trial, when no findings of fact or conclusions of law are filed, we imply that the trial court made all necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Lopez v. Hansen*, 947 S.W.2d 587, 589 (Tex. App.—Houston [1st Dist.] 1997, no writ). The implied findings may be challenged for both legal and factual sufficiency. *Whaley v. Cent. Church of Christ of Pearland*, 227 S.W.3d 228, 231 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)).

Alli does not specify in his appellate brief whether he challenges the court's findings for legal or factual sufficiency. Throughout his brief on each of his issues, he characterizes the evidence as "undisputed" and facts in his favor as having been "conclusively established" or "established as a matter of law." Accordingly, we construe Alli's three issues as making legal sufficiency challenges. *See Regal Fin.*

*Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010) (noting that evidence is legally insufficient when it "conclusively establishes the opposite of the vital fact") (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

"An appellate court will apply the same standard of review to sufficiency challenges of implied findings as is applied in the review of jury findings." *Ryan v. Abdel-Salam*, 39 S.W.3d 332, 335 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). In a legal sufficiency review, all the evidence is considered in the light most favorable to the judgment rendered. *Regal Fin. Co.*, 355 S.W.3d at 603. "For evidence to conclusively establish the opposite of a vital fact, the evidence must be the type that could not lead reasonable people to different conclusions." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 815–16 (Tex. 2005)). "If more than a scintilla of evidence supports the challenged finding, the no-evidence challenge fails." *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam).

## Analysis

Alli raises three issues on appeal. First, he argues that the evidence at trial conclusively established that Bayview had breached the deed of trust by failing to provide proper pre-foreclosure notice to his agent, Wariboko. Alli contends that the authorization letter and the subsequent course of conduct between Wariboko and

6

Bayview resulted in a contractual obligation to send such notice to Wariboko. Second, Alli argues that the evidence at trial conclusively established that Bayview waived any right to rely on the notice provisions in the deed of trust by acknowledging and dealing with Wariboko, and therefore the trial court erred in impliedly denying relief on this basis. Third, Alli argues that the evidence conclusively established that Bayview was estopped from denying its promise to deal with Wariboko as Alli's agent, and therefore the trial court erred in impliedly denying his claim for promissory estoppel.

For the reasons detailed below, we disagree with Alli's arguments. The record does not reflect any evidence that Bayview was obligated or had otherwise promised to send notices of foreclosure to Wariboko.

1. **Neither the authorization letter nor the communications between Wariboko and Bayview conclusively established a contractual obligation**

Alli, as the plaintiff, has the burden to prove that the defendants breached a contractual obligation to provide notice to Wariboko. *See SLT Dealer Group, Ltd. v. AmeriCredit Fin. Servs., Inc.*, 336 S.W.3d 822, 828 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The key pieces of evidence for Alli's breach of contract claim are the authorization letter and the course of conduct between Wariboko and Bayview. According to Alli, these facts conclusively demonstrate Bayview's recognition of Wariboko's agency. However, we conclude that these facts do not

7

conclusively establish a contractual duty to provide notice of foreclosure to Wariboko.

## A. Authorization letter

The operative language in the authorization letter states that Alli "authorize[s] the release of any and all information pertaining to the above referenced loan to Tex A. Wariboko . . . ."[2] Alli contends that the authorization letter represents a modification of the deed of trust's notice provision. However, even if the authorization letter was intended to modify the deed of trust, we conclude that it fails as a contractual modification for want of consideration. "A modification must satisfy the elements of a contract: a meeting of the minds supported by consideration." *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986); *see also Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 314 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Consideration is defined as "either a benefit to the promisor or a loss or detriment to the promisee." *N. Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998) (quoting *Receiver for Citizen's Nat'l Assurance Co. v. Hatley*, 852 S.W.2d 68, 71 (Tex.

---

[2]  Although Alli does not argue otherwise, we note that this document plainly does not meet the requirements of an integrated contract. "In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). The lack of terms in the authorization letter makes it impossible to determine what obligations, if any, the parties undertook, and thus it fails as a contract.

App.—Austin 1993, no writ)). Alli has not identified, and the record does not reflect, the consideration exchanged with respect to the authorization letter. Accordingly, the authorization letter fails as a modification of the deed of trust.

**B.    Course of conduct between Wariboko and Bayview**

Alli contends that "Bayview was aware of and acknowledged the agency relationship between Mr. Alli and Mr. Wariboko and dealt repeatedly with Mr. Wariboko in his capacity as Mr. Alli's agent, including accepting correspondence from him, sending him confidential information about the Note, requesting financial information from him, and sending him a proposed payoff amount for the loan." Alli characterizes these circumstances as an "agreement to deal with Mr. Wariboko" that Bayview breached.

The record is replete with testimony that Cortes, as Bayview's agent, discussed the possibility of a discounted payoff with Wariboko. That said, there is no testimony or other evidence indicating that Bayview stated to or agreed with anyone that it would provide notice of foreclosure to Wariboko. Cortes testified that the topic of his communications with Wariboko was the discounted payoff, not foreclosure proceedings. He specifically testified that neither Alli nor Wariboko ever requested that notices of foreclosure be sent to Wariboko. Although Wariboko testified that he was hired in part to receive notices of foreclosure, that testimony only addresses his understanding with his client, Alli, not an agreement with

Bayview. Wariboko also testified that "it was clear to [Cortes] that everything was going to be sent to me," but he did not testify as to any specific agreement by Bayview that notices of foreclosure would be sent to him. Without any such evidence, Alli did not conclusively prove that Bayview had a contractual obligation to provide notice of foreclosure to Wariboko.

In summary, the trial court might have impliedly found that Alli failed to prove that the defendants were under a contractual obligation to provide notice of foreclosure to Wariboko. Alli, having the burden of proof on this question, did not produce evidence at trial conclusively demonstrating such an obligation. Therefore, we overrule Alli's first issue.

## 2. The evidence did not conclusively establish waiver of the deed of trust's notice provisions

Alli argues that "[t]he evidence that supported [his] claim for breach of contract also conclusively established that Bayview waived any right to rely strictly on the Deed of Trust and Note for its notice requirements by accepting and dealing with Mr. Wariboko as Alli's agent." We interpret this argument to mean that Bayview waived the deed of trust's strictures concerning how a change of address should be effectuated and how to provide proper notice of foreclosure. We disagree with this argument because, in the same way that the evidence did not conclusively establish a contractual obligation to convey notices of foreclosure to

Wariboko, the evidence did not conclusively establish Bayview's waiver of the notice provisions.

"The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). "Waiver is ordinarily a question of fact." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). "Where the facts and circumstances are admitted or clearly established, however, the question becomes one of law." *Id.*

There was no evidence presented at trial that Bayview actually intended to waive the notice provisions. *See Ulico*, 262 S.W.3d at 778. As to whether Bayview undertook "intentional conduct inconsistent with" the notice provisions, *see id.*, the fact that Bayview communicated with and released some information to Wariboko in connection with payoff discussions is not inconsistent with the strictures of the notice of foreclosure provisions. *Cf. Enchilada's Nw., Inc. v. L & S Rental Props.*, 320 S.W.3d 359, 364 (Tex. App.—El Paso 2010, no pet.) (concluding that lessor's heated remark to lessee that he should move out was not inconsistent with lease's notice provision requiring 180 days' notice before termination). Accordingly, the evidence did not conclusively establish any waiver, and we overrule Alli's second issue.

11

**3.    The evidence did not conclusively establish a promise to provide notice of foreclosure to Wariboko**

Alli argues that the "undisputed evidence" established promissory estoppel because Bayview promised to deal with Wariboko regarding Alli's account. He contends that Bayview "agreed to provide any and all information to Mr. Wariboko, and then communicated with Mr. Wariboko about the Note, provided him with confidential information including a payoff amount, and subsequently notified him that the foreclosure sale had occurred." The record, however, does not conclusively establish that Bayview promised to send notices of foreclosure to Wariboko.

The elements of promissory estoppel are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 152 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). "Promissory estoppel does not apply to a promise covered by a valid contract between the parties; it does apply, however, to a promise outside the contract." *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 825 (Tex. App.—Dallas 2003, pet. denied); *see also Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002) (noting that "the promissory-estoppel doctrine presumes no contract exists"). The promise must be one "which the promisor should reasonably expect to induce action or forbearance of a definite

12

and substantial character on the part of the promisee." *CRSS Inc. v. Runion*, 992 S.W.2d 1, 6 (Tex. App.—Houston [1st Dist.] 1995, pet. denied) (quoting *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972) (quoting RESTATEMENT OF CONTRACTS § 90 (1932))). As a corollary, the promise "must be more than mere speculation concerning future events, a statement of hope, or an expression of opinion, expectation, or assumption." *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

There is no testimony or other evidence in the record that anyone promised to Alli or Wariboko that notice of foreclosure would be sent to Wariboko. The authorization letter is no proof because, first, it contains no promise and, second, it represents the words of the alleged promisee rather than those of the alleged promisor. Moreover, no one at trial testified as to any promise made concerning notices of foreclosure that could be "reasonably expect[ed] to induce action or forbearance of a definite and substantial character." *CRSS*, 992 S.W.2d at 6. Consequently, we overrule Alli's third issue.

## Conclusion

We affirm the court's judgment.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.