Vinnie BILOTTO, Plaintiff,

v.

ALLIED PROPERTY & CASUALTY
INSURANCE COMPANY,
Defendant.

Civil Action No. SA–13–CA–721–FB.

United States District Court,
W.D. Texas,
San Antonio Division.

Signed Jan. 16, 2015.

Daniel Oren Kustoff, Melanie H. Phipps, Nina Jamin Petrow, Kustoff & Phipps, L.L.P., San Antonio, TX, for Plaintiff.

Patrick M. Kemp, Robert Glen Wall, Segal McCambridge Singer & Mahoney Ltd., Austin, TX, for Defendant.

### ORDER ACCEPTING MEMORANDUM AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

FRED BIERY, Chief Judge.

Before the Court are the Memorandum and Recommendation of the United States Magistrate Judge filed November 24, 2014 (docket # 50), Plaintiff's Objections to Magistrate Judge's Recommendation filed December 9, 2014 (docket # 54), and Defendant Allied Property and Casualty Insurance Company's Response to Plaintiff's Objection to Magistrate Judge's Recommendation filed December 22, 2014 (docket # 55).

■ Where no party has objected to a Magistrate Judge's Memorandum and Recommendation, the Court need not conduct a de novo review of them. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In such cases, the Court need only review the Memorandum and Recommendation and determine whether they are either clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989).

■ On the other hand, any Memorandum or Recommendation to which there are objections requires de novo review by the Court. Such a review means that the Court will examine the entire record, and will make an independent assessment of the law. The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir.1987).

In the Memorandum, United States Magistrate Judge Primomo recommends that Defendant Allied Property and Casualty Insurance Company's Motion for Summary Judgment (docket # 34) be GRANTED. In his objections, plaintiff contends defendant's expert's opinion on causation is unreasonable because "she failed to acquire any site specific soil samples and dealt in 'typical findings' and nothing specific to the subject property made the basis of this suit or even taken within a mile of Mr. Bilotti's [sic] property." *Plaintiff's Objections,* docket# 54 at page 3.[1] Plaintiff asserts he is entitled to "an investigation regarding his claim and his property and not the 'typical finding' the experts may encounter." *Id.* However, as the defendant notes in its response, "it is undisputed that the damage was caused, at least in part, by a non-covered cause of loss." *Defendant's Response to Plaintiff's Objections,* docket # 55 at page 1. As a result, "any damage is excluded under the Anti–Concurrent Causation Clause" as discussed in the Memorandum and Recommendation, and plaintiff has not objected to the application of that policy provision. *Id.*

The Court has conducted a de novo review of the Magistrate Judge's Memorandum and Recommendation with respect to the objection filed by plaintiff and concludes the objection is without merit.

Having found the objection to be without merit, the Court hereby accepts, approves, and adopts the Magistrate Judge's factual findings and legal conclusions contained in the Memorandum and Recommendation and incorporates herein the arguments and authorities presented by the defendant in Defendant Allied Property and Casualty Insurance Company's Response to Plaintiff's Objection to Magistrate Judge's Recommendation (docket # 55). The Memorandum and Recommendation of the United States Magistrate Judge shall be accepted pursuant to 28 U.S.C. § 636(b)(1) such that Defendant Allied Property and Casualty Insurance Company's Motion for Summary Judgment (docket # 34) shall be GRANTED.

Accordingly, it is hereby ORDERED that the Memorandum and Recommendation of the United States Magistrate Judge, filed in this case on November 24, 2014 (docket # 50) is ACCEPTED such that Defendant Allied Property and Casualty Insurance Company's Motion for Summary Judgment (docket # 34) is GRANTED and plaintiff's claims and causes of actions are DISMISSED WITH PREJUDICE. Motions pending, if any, are also DISMISSED, and this case is CLOSED.

It is so ORDERED.

---

1. In support of the unreasonableness objection, plaintiff refers this Court to Exhibit F of his response at page 23, line 4–pg. 26. Exhibit F, however, is the Affidavit of Homer W. Parker, Jr. The Court presumes plaintiff meant to refer to Exhibit J. Ms. Kilgore explains in this portion of her deposition why she did not do a site specific soil investigation. She states:

> Typically, the only reason we would do that is if there was something that jumped out at me as being atypical or something that— you know, just based on my experience, if I go out and I'm, like, I just can't figure out why this is doing that, we might do it. But in general, especially in the vast part of

> Texas, we have clay soils that I have a pretty good grasp of how they react with various structures. So unless there's something that really says to me what's going on here, we would typically not do a site specific soil investigation.

*Exhibit J, docket # 48–1 at page 411 of 560, lines 8–18.* However, as noted by the defendant in its response, plaintiff's own expert agreed some of the foundation damage was due in part to the heaving and settling of expansive soils unrelated to any underground sewer line plumbing leak, and even the plaintiff reported cracking was present at the subject property as early as 2010.

## MEMORANDUM AND RECOMMENDATION

JOHN W. PRIMOMO, United States Magistrate Judge.

Before the Court is defendant, Allied Property & Casualty Insurance Company's Motion for Summary Judgment (docket nos. 34 and 49), to which plaintiff, Vinnie Bilotto, has responded (docket no. 48). Upon consideration of the motion, response, and applicable law, the Court believes defendant's Motion for Summary Judgment should be **GRANTED** (docket no. 34).

## BACKGROUND

This suit arises from an insurance coverage dispute. Plaintiff owns a commercial property, located at 7654 FM 78, San Antonio, Texas 78244, that was insured by Allied Property & Casualty Insurance Company ("Allied") against "Risks of Direct Physical Loss" *unless* the loss was excluded in Section B, or limited in Section C of the Policy. (Docket no. 34, exh. 1–A, pg. 43).

In June of 2010, plaintiff purchased the property despite observing cracks in the building. (Docket no. 48, exh. J, pg. 99). Almost one year later, in July of 2011, plaintiff was advised by a tenant that the tenant's contractor was concerned about the integrity of the building due to cracks on the exterior of the wall. (Docket no. 48, exh. K, pp. 11–12). Plaintiff contacted a foundation company that found foundation damage and suggested that a plumbing leak might be to blame. (*Id.*). Plaintiff was advised to contact his insurance carrier regarding coverage. (*Id.*).

On July 20, 2011, Bilotto contacted his insurance company, Allied, and filed a claim. Allied assigned Anthony Coleman to respond to the claim, and Coleman went to the premises to obtain further information. Coleman advised plaintiff to obtain a plumbing company and plaintiff subsequently retained Quarter Moon Plumbing, Inc. ("Quarter Moon"), which found several plumbing leaks.[1] (Docket no. 34, exh. 1–C). Coleman then retained ProNet Group, Inc. ("ProNet") to perform an engineering inspection of the property in order to ascertain "if the reported plumbing leaks [ ] caused or contributed to any differential foundation movement and related damages and to determine if any other soil-structure mechanisms [were] contributing to any foundation movement." (*Id.*, exh. 1–D).

ProNet reported the following observations of damage to the exterior of the building: CMU cracks; CMU separations, and foundation slab cracks. (Docket no. 34, exh. 1–D). Additionally, ProNet reported the following observations of damage to the interior of the building: wall sheetrock cracks/separations; and doorframes out of square. (*Id.*). Both ProNet and Quarter Moon determined that the damages to the property were caused by three separate plumbing leaks under the property, as well as by nonplumbing sources. ProNet found the nonplumbing sources included soil movement, foundation design, and the quality of materials used in the foundation's construction. (*Id.*). Subsequently, Allied determined that the damages were excluded from the Policy and notified Bilotto in writing that it was denying his claim. (*Id.*, exh. 1–E).

Bilotto then retained Parker Engineering, LLC ("Parker") to "generate a Summary of Opinions regarding the necessary

---

**1.** Defendant states that it retained Quarter Moon; however, plaintiff maintains he contacted Quarter Moon after Coleman told him to do so. This discrepancy appears to have no bearing on the issue of coverage.

Scope of Work to repair the Commercial Strip Center due to the multiple plumbing leaks." (Docket no. 48, exh. E, pg. 1). Parker concurred with Allied's engineer that the distress and damages to the property in the zone of influence had been caused by the multiple leaks identified in the Quarter Moon report. (*Id.*, pg. 2; exh. C, pg. 10). However, Parker disagreed with the scope of repair proposed by Allied's engineer and recommended further geotechnical testing as well as a scope of repair which included, installation of exterior piers and injection of chemical soil stabilizers. (*Id.*, exh. E, 2–3).

On June 21, 2013, plaintiff filed suit against Allied in the 408th District Court of Bexar County, Texas, alleging breach of contract, violations of Chapters 541 and 542 of the Texas Insurance Code, breaches of the fiduciary duty of good faith and fair dealing, violations of the Deceptive Trade Practices Act ("DTPA"), negligence, gross negligence, and misrepresentation, maintaining that defendant performed an outcome-oriented investigation of plaintiff's claim which resulted in a biased, unfair and inequitable evaluation of plaintiff's loss.[2] (Docket no. 1). On August 13, 2013, defendant removed the case to this Court based on diversity. (Docket no. 1). Presently before the Court is defendant's motion for summary judgment. (*Id.*).

### STANDARD OF REVIEW

Summary judgment shall be rendered if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The plain language of this rule mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing suffi-

cient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir.1993) (*citing Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

A summary judgment movant or opponent must cite to materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. FED.R.CIV.P. 56(c)(1). The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007) (*quoting Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). Further, it is not the Court's function to search the record on the nonmovant's behalf for evidence that may raise a fact issue. *Topalian v. Ehr-*

---

**2.** Plaintiff subsequently amended his complaint, and omitted his claims for negligence,

gross negligence, and misrepresentation. (Docket no. 24).

*man,* 954 F.2d 1125, 1137 n. 30 (5th Cir. 1992).

### DISCUSSION

Defendant moves for summary judgment maintaining that plaintiff cannot prevail on his claim for breach of contract because the damages caused by plumbing leaks, earth movement, and to the foundation itself (regardless of whether the damages were caused exclusively by earth movement or as a result of faulty design and/or construction) are excluded under the policy. Additionally, defendant maintains that because plaintiff's claim is not covered by the policy, plaintiff cannot prevail on his extra-contractual claims. In support of its motion, defendant submits the following summary judgment evidence: Exhibit 1- Declaration of Anthony Coleman; Exhibit 1–A- Insurance Policy; Exhibit 1–B- Activity Logs; Exhibit 1–C- Report by Quarter Moon dated August 2, 2011; Exhibit 1–D- ProNet Group's Report of Findings, dated August 24, 2011; Exhibit 1–E- Letter to Insured, Bilotto, dated August 30, 2011, from defendants; Exhibit 1–F- Letter from Homer W. Parker, Jr. P.E. to Danny Kustoff, dated July 29, 2012, regarding the elevation differences on property; Exhibit 1–G- Letter from Homer W. Parker, Jr. P.E. to Nina Petrow, dated December 4, 2013, regarding the elevation differences on property; Exhibit 2- Deposition of Homer W. Parker, Jr., P.E.; and Exhibit 3- Deposition of Vinnie Bilotto.

Plaintiff maintains there is a genuine issue of fact regarding the cause of the loss in this case. In particular, plaintiff maintains that Allied failed to introduce any admissible and scientifically reliable evidence that the foundation moved as a result of nonplumbing factors, or that the leaks lasted over a period of 14 days. In support of his position, plaintiff submits the following summary judgment evidence: Exhibit A- Insurance Policy; Exhibit B- Quarter Moon Plumbing Report, dated August 2, 2011; Exhibit C- ProNet Report, dated August 24, 2011; Exhibit D- Denial Letter from Allied to Bilotto, dated August 30, 2011; Exhibit E- Parker Engineering Report, dated December 4, 2013; Exhibit F- Affidavit of Homer W. Parker, Jr. P.E.; Exhibit G- Deposition of Homer W. Parker, Jr. P.E.; Exhibit H- Deposition of Brenda Torney; Exhibit I- Deposition of Anthony Coleman; Exhibit J- Deposition of Haley Kilgore, P.E.; Exhibit K- Deposition of Vinnie Bilotto; Exhibit L- Affidavit and Report: Ratcliff Consulting; and Exhibit M- Affidavit of Homer W. Parker, Jr. P.E.

### I. PLAINTIFF'S BREACH OF CONTRACT CLAIM

Bilotto sued Allied for breach of contract, alleging that Allied "has refused and failed to pay the claim according to its obligations under the contract of insurance and, [ ] fail[ed] to make the payments as required under the contract." (Docket no. 24, pg. 3). The parties do not dispute that the Property is a premises described in the Declarations and covered under the Policy or that the three plumbing leaks contributed to the foundation and structural damage for which plaintiff seeks compensation pursuant to his Policy. The issue here is whether the exclusions cited to by the defendant exclude coverage under the Policy for the damages claimed so as to absolve defendant of liability.

Initially the Court notes that because this is a diversity action, Texas substantive law applies. *See Holt v. State Farm Fire & Cas. Co.,* 627 F.3d 188, 191 (5th Cir.2010). Texas law provides that "the insured has the [initial] burden of establishing coverage under the terms of the policy." *Gilbert Texas Constr., L.P. v.*

*Underwriters at Lloyd's London,* 327 S.W.3d 118, 124 (Tex.2010) (*citing Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 782 (Tex.2008)). Once the insured establishes coverage, the burden shifts to the insurer, who must prove the loss is within an exclusion to avoid liability. *Id.* (*citing Ulico Cas. Co.,* 262 S.W.3d at 782). If the insurer meets this burden, then the insured must demonstrate an exception to the exclusion to bring the claim back within the Policy's coverage. *Id.*

 Further, when interpreting an insurance policy, Texas courts apply the following principles:

First, we look at the language of the policy because we presume parties intend what the words of their contract say. We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless. The policy's terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense. Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions into it.

*Gilbert Texas Constr., L.P.,* 327 S.W.3d at 124 (internal citations omitted).

Here, defendant relies on the following exclusions in the Policy: (1) Water- Water that backs up or overflows or is otherwise discharged; and water under the ground surface; (2) Earth Movement–Earth sinking, rising, or shifting; (3) Foundation design/detail and quality of materials and workmanship during original construction; (4) Settling, cracking, shrinking or expansion; and (5) Damage resulting from continuous or repeated seepage. The relevant sections of the Policy are set out below:

**B. EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\* \* \*

**b. Earth Movement**

\* \* \*

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

\* \* \*

2. We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

d. (1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

\* \* \*

(4) **Settling, cracking, shrinking or expansion.**

f. **Continuous or repeated seepage or leakage of water,** or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

\* \* \*

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an

excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

* * *

**c. Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance; of part or all of any property on or off the described premises.

(Docket no. 34, exh. 1–A, pgs. 42–46). Additionally, the Policy contains a Water Exclusion that excludes the following:

**B. Water**

* * *

3. Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

4. Water under the ground surface pressing on, or flowing or seeping through:

a. Foundations, walls, floors or paved surfaces ...

(Docket no. 34, exh. 1–A, pg. 53).

■■■ Defendant contends that summary judgment as to plaintiff's contract claim is warranted because the plain language of these provisions excludes coverage for damage caused by foundation movement as a result of water seepage; damage caused by earth movement; and damage to the foundation itself, whether caused exclusively by earth movement or as a result of faulty design. The parties do not appear to dispute that the claimed foundation and structural damage was caused, in part, by the plumbing leaks; however, plaintiff maintains that all the damages to his property were the result of an accidental discharge or leakage of covered water or other liquid, which was the direct result of the breaking apart or cracking of a plumbing system.

The Policy pays for "water damage" which is defined as "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located *on* the described premises and contains water or steam." (Docket no. 34, exh. 1–A, pg. 52). Plaintiff alleges Allied has not introduced any admissible evidence to establish as a matter of law that the Water Exclusion Endorsement applies in this case and, in particular, argues that there is no evidence of "[w]ater that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment"; or of "[w]ater under the ground surface pressing on, or flowing or seeping through: Foundations, walls, floors or paved surfaces." (*Id.*, pg. 53). According to Quarter Moon, the plumbing leaks were located in the sanitary drain system below the foundation. (*Id.*, exh. 1–C, pgs. 3–4). While it is unclear what precisely caused these plumbing leaks, the Policy includes a Water Exclusion Endorsement that excludes water under the ground surface pressing on, or flowing or seeping through foundations, walls, floors or paved surfaces. (*Id.*, exh. 1–A, pg. 53). Here, plaintiff's expert, Parker, testified that there were two causes of damage at work, one of which was the slope of the asphalt parking lot on the southern end of the lot which created drainage problems that resulted in

earth movement beneath the property's foundation. (Docket no. 48, exh. G, pp. 33–36).

Plaintiff argues that the Water Exclusion Endorsement is not applicable to the covered location because it was not listed among the form numbers identified as specific to Premise No. 9 in the Commercial Property Schedule. This argument is unavailing. The Policy's Declarations Page clearly states "[t]his policy is subject to the following forms. Forms specific to a certain building or item can be found with the specific building and item information on the following pages." (Docket no. 34, exh. 1–A, pg. 002). Included in the forms that the policy is subject to are the following: CP0010- Building and Personal Property Coverage Form; CP0140- Exclusion of Loss Due to Virus or Bacteria; 13614- Special Continuation Provision; IN7404- Important Flood Insurance Notice; IL0017- Common Policy Conditions; CP0090- Commercial Property Condition; IN7344- Advisory Notice to Policyholders; **CP1032- Water Exclusion Endorsement;** IN7158- Important Notice; CP1272- Texas Changes–Joint or Disputed Loss Agreement; and IN5017- Important Notice for Renewal Policies. (*Id.*)(emphasis added). It is clear from the language contained in the Declaration cited to above, as well as from the types of forms identified, that the Policy was subject to all of these forms, while forms specific to a particular location were listed in the schedule.

Nevertheless, plaintiff also contends that the Water Exclusion Endorsement was not stated as a basis for denial of the claim and further, that defendant's agent admitted that denial of the claim was not based on this endorsement. However, the Policy excludes coverage for the "[c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more." (Docket no. 34, exh. 1–A, pg. 045). This exclusion was listed as part of the basis for the denial of plaintiff's claim. (*Id.*, exh. 1–E).

Plaintiff argues that there is no evidence the that leaks were continuous over a 14-day period. He states that Allied has completely failed to introduce any summary judgment evidence or testimony, which would support Allied's allegation that any leaks occurred repeatedly and/or continuously for 14 days or more. There is no dispute that in this particular case no specific soil or geotechnical testing was done to determine the length of the leaks. Plaintiff insists that a genuine issue of fact exists as to whether the leaks resulted in an acute, accidental discharge of covered water or liquids versus lengthy leaks lasting 14 or more days.

According to the ProNet report, dated August 24, 2011, the damages to the property included CMU cracks, CMU separations, and foundation slab cracks to the exterior of the building, along with wall sheetrock cracks/separations and doorframes out of square to the interior of the building. (Docket no. 34, exh. 1–C, pg. 100). Although plaintiff sought reimbursement for these damages under his Policy, arguing that the foundation issues were caused by the plumbing leaks discovered in July of 2011, arguably the leaks existed for some time. Plaintiff reported that there was CMU cracking along the south side of the structure when he purchased the property in June of 2010, and stated that the cracking had gotten worse over time. (Docket no. 48, exh. J, pg. 99). Additionally, Parker's testimony regarding the drainage issues on the southern part of the lot is also some evidence of a "[c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more."

■ Plaintiff contends that additional testing is necessary to prove the duration and magnitude of the liquid discharged. However, the plain language of the Earth Movement exclusion also unambiguously excludes coverage for any settling, cracking, shrinking or expansion regardless of the cause. Further, based on the plain language of the Earth Movement exclusion, any damage caused by the earth sinking, rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty is also excluded. Moreover, the Policy specifies that soil conditions include the action of water under the ground surface, such as the drainage issues referred to by Parker, plaintiff's expert. (Docket no. 34, exh. 1–A).

In any event, ProNet Group, Inc. found that there was a relationship between the plumbing leaks and the relatively high foundation/slab elevation and that the foundation had experienced some differential foundation movement and resulting damage due to factors "such as change in moisture contents resulting from non-plumbing sources, soil characteristics, and foundation design/detail and quality of materials and workmanship during original construction." (Docket no. 34, exh. 1–D, pg. 5). Haley Harbour, the professional engineer who prepared the report, concluded that because the three leaks were located in an area of local high relative elevations, that it was reasonable to conclude a relationship existed between the leaks and the relatively higher elevations in that area. (*Id.*, pg. 10). Harbour further found that the damages to the building outside the zone of influence were the result of other factors. (*Id.*).

Plaintiff's expert, Parker, admitted as much, stating that "[t]he distresses to the architectural finishes away from the leak . . . are not related to the leak and as noted in the ProNet Group report other factors may be at play." (*Id.*, exh. 1–F, pg. 2). Parker concluded that "part of the foundation to the north has been affected by the leak and the related distresses to the finishes are related to this movement and that ProNet Group has not substantiated that the uplift is not leak related." (*Id.*). However, assuming these leaks were not ongoing for over 14 days when first discovered in July of 2011 (docket no. 48, exh. J, pg. 17–18), the fact that plaintiff admitted seeing cracks when he first purchased the property in June of 2010, and observed that the cracks had gotten worse over time (docket no. 48, exh. K, pg. 11–13), would seem to further indicate that the uplift was not leak related and that other nonplumbing issues were at play (docket no. 48, exh. J, pg. 99).

■ One such nonplumbing source noted by ProNet was the foundation design/detail and quality of materials and workmanship during original construction. As previously noted, ProNet found that "negative drainage" on the south side of the foundation played a role in exacerbating the soil shrinking and swelling cycle. (Docket no. 34, exh. 1–D, pg. 11). Parker, also, testified that there were two causes of damage at work, one of which was the slope of the asphalt parking lot on the southern end of the lot which created drainage problems that resulted in earth movement beneath the property's foundation. (*Id.*, exh. G, pp. 33–36). Excluded under the Policy is loss or damage due to faulty, inadequate or defective: (1) planning, zoning, development, surveying, siting; (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) materials used in repair, construction, renovation or remodeling; or (4) maintenance; of part or all of any property on or off

the described premises. (Docket no. 34, exh. 1–A, pg. 46).

Plaintiff argues in response that Allied cannot rely on this exclusion because to date, it has failed to specifically plead as part of its affirmative defense that the policy precludes coverage pursuant to B.3.c., which excludes loss or damages due to foundation design/detail and quality of material and workmanship during original construction. In its amended answer, under the caption "Eleventh Defense: Policy Provisions Preclude Coverage," defendant specifically cited to the Water exclusion and the Earth Movement exclusion but not to the Faulty Design/Construction exclusion. (Docket no. 27).

Allied did allege that "[p]laintiff cannot recover, in whole or in part, on its breach of contract cause of action—and consequently any other causes of action alleged in Plaintiff's Amended Complaint (including those which may be asserted under the Texas Insurance Code)—because the Policy contains exclusions and provisions which negate coverage, in whole or in part." Defendant then refers to various provisions in the Policy, and under section "B. Exclusions And Limitations," refers to the "applicable Causes Of Loss Form as shown in the Declarations." The Cause of Loss Form shown in the Declaration includes a provision that provides an exclusion for loss or damages caused by faulty, inadequate or defective foundation design/detail and quality of materials and workmanship during original construction. (Docket no. 34, exh. 1–A, pg. 046). Arguably, this is sufficient to "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff fair notice of the defense that is being advanced." *Rogers v. McDorman,* 521 F.3d 381, 385 (5th Cir.2008) (internal quotation marks omitted); *see also* FED.R.CIV.P. 8(c).

Even assuming, however, that the pleading fails to provide plaintiff with adequate notice under Rule 8(c), "a defendant does not waive an affirmative defense if it is raised at a 'pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'" *Rogers,* 521 F.3d at 386 (*citing Arismendez v. Nightingale Home Health Care, Inc.,* 493 F.3d 602, 610 (5th Cir.2007) (*quoting Lucas v. United States,* 807 F.2d 414, 418 (5th Cir.1986)); *see also Allied Chem. Corp. v. Mackay,* 695 F.2d 854, 855 (5th Cir.1983) (trial court has discretion to determine whether the unpleaded affirmative defense has been raised and opposing party has suffered prejudice or unfair surprise). In his response, plaintiff argues that "Allied's denial letter [was] based on ProNet Group Inc.'s conclusion that the foundation system has experienced differential foundation movement and damage because of *other factors such as change in moisture contents resulting from non-plumbing sources.*" (Docket no. 48, pg. 7, § 26)(emphasis added). Moreover, plaintiff admitted that Allied supported "its decision by quoting the exclusions for 1) earth movement, 2) damages caused by design or construction defects, and 3) damages caused by seepage of water for a period of 14 days or more." (*Id.*)(emphasis added). Given that plaintiff was on notice that Allied based it decision to deny coverage, in part, due to the exclusion for damages caused by design or construction defects, as far back as August 30, 2011, when Allied wrote to plaintiff advising him of its decision, and further, that plaintiff was clearly aware that Allied was relying on this exclusion to support its decision, plaintiff can hardly claim to have suffered prejudice or unfair surprise. *Mackay,* 695 F.2d at 855.

In an effort to refute the applicability of the Earth Movement exclusion,

plaintiff contends that this exclusion applies only to such movement due to naturally occurring causes rather than man-made sources. In support thereof, plaintiff cites to the following: *Winters v. Charter Oak Fire Ins. Co.*, 4 F.Supp.2d 1288, 1291 (D.N.M.1998); *Rankin v. Generali–U.S. Branch*, 986 S.W.2d 237, 239 (Tenn. App.1998)4; *Wyatt v. Northwestern Mut. Ins. Co.*, 304 F.Supp. 781, 783–4 (D.Minn. 1969); *Barash v. Ins. Co. of North America*, 114 Misc.2d 325, 451 N.Y.S.2d 603, 607 (N.Y.Sup.Ct.1982). The Court is unpersuaded and finds these cases distinguishable.

Moreover, the Fifth Circuit briefly addressed this very argument, finding that the plain language of the Earth Movement and Water exclusions unambiguously excluded coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Texas Renegade Const. Co., Inc. v. Hartford Lloyd's Ins. Co.*, 546 Fed.Appx. 400 (5th Cir.2013). In affirming the trial court, the Fifth Circuit agreed that the exclusions were not limited to damages caused only by natural events because the language of the Policy did not specifically identify the events from which the water originates, but rather, specifically stated that loss or damage caused directly or indirectly by earth movement or water under the ground was excluded "regardless of any other cause or event," including natural events or man-made occurrences. *Texas Renegade Const. Co., Inc.*, 546 Fed.Appx. 400; *see also Texas Renegade Const. Co., Inc. v. Hartford Lloyd's Ins. Co.*, H–11–1730 (S.D. Tex. June 18, 2011).

As in *Texas Renegade*, the Policy language in the present case includes an Anti–Concurrent Causation Clause, which unambiguously provides that Allied "will not pay for loss or damage caused directly or indirectly by [earth movement or water

under the ground surface] ... [and that] [s]uch loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Docket no. 34, exh. 1–A, pg. 43). The plain language of this Clause, along with the Earth Movement and Water exclusions, provides that plaintiff's claimed damages are excluded from coverage under the Policy, regardless of whether the leaks or movement occurred as a result of natural or artificial means. *Id.*, 546 Fed. Appx. 400; *see also Claunch v. Travelers Lloyds Ins. Co.*, No. 4:07–CV–548–A, 2008 WL 114844, at *4 (N.D.Tex. Jan. 10, 2008) (interpreting similar language and finding that "under the plain terms of the [p]olicy, the loss of damage is excluded if it came from any of the sources suggested by the record").

■ Further, plaintiff's argument that "there are fact issues of one or more possible causes before the Court, some of which may be covered by the Policy, even if others are excluded," is unavailing in light of the Anti–Concurrent Causation Clause which excludes coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Docket no. 34, exh. 1–A, pg. 43). In his report dated July 29, 2012, Parker, plaintiff's professional engineer, states that:

(1) "In review of the ProNet Group report, we agree that there is a relationship between the reported leaks and the higher relative elevations in the foundation system"; and,

(2) "The distresses to the architectural finishes away from the leak (near the southern end of the building) are not related to the leak and as noted in the ProNet Group report other factors may be at play."

(Docket no. 34, exh. 1–F). Additionally, in his report dated December 4, 2013, Parker states that:

> (1) "there is a correlation between the higher elevation data points, door reveal slopes and cosmetic distress patterns in proximity to the multiple leaks identified in the Quarter moon Plumbing Report"; and,
>
> (2) "[t]he report from ProNet Group, Inc. also agrees that there is a relationship between the multiple leaks and the influence on the foundation."

(*Id.*, exh. 1–G). As noted above, Parker also testified that there was another cause of damage at work, in that the slope of the asphalt parking lot on the southern end of the lot created drainage problems that resulted in· earth movement beneath the property's foundation. (Docket no. 48, exh. G, pp. 33–36). Plaintiff cannot dispute the existence of multiple causes which contributed to the damage for which they seek insurance coverage. Even if some of the distresses are related to the plumbing leaks, the Anti–Concurrent Causation Clause in the Policy excludes coverage.

Once Allied established its burden of showing the loss fell within an exclusion to the insurance Policy, the burden shifted back to plaintiff to show an exception to the exclusion so as to bring plaintiff's claim back within coverage. Plaintiff failed to meet his burden and provides the Court with no evidence that would raise a fact issue in this regard. Accordingly, defendant's motion for summary judgment should be **GRANTED** as to plaintiff's contractual claims.

## II. PLAINTIFF'S EXTRA–CONTRACTUAL CLAIMS

Defendant next maintains that plaintiff's extra-contractual claims fail as a matter of law since the undisputed evidence establishes that there is no coverage under the Policy for the damages alleged. In addition to breach of contract, plaintiff has sued defendant for violations of Chapters 541 and 542 of the Texas Insurance Code, breach of the fiduciary duty of good faith and fair dealing, and violations of the DTPA.

### 1. Breach of Fiduciary Duty of Good Faith and Fair Dealing

Plaintiff alleges that defendant had a duty to deal fairly and in good faith with its insured in the processing and payment of claims and that defendant breached this duty. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340 (Tex.1995) *(citing Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987)). To establish a breach of the duty of good faith and fair dealing,. a party must show: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Stoker,* 903 S.W.2d at 340 *(citing Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988)). However, generally, "an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London,* 459 Fed.Appx. 366, 368 (5th Cir.2012) *(citing Liberty Nat'l Fire Ins. v. Akin,* 927 S.W.2d 627, 629 (Tex.1996)); *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.,* 297 S.W.3d 248, 253–54 (Tex.2009) ("there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered"). The two noted exceptions to this rule are the insurer's (1) failure to timely investigate the insured's claim or (2) commission of "some act, so extreme, that would cause injury indepen-

dent of the policy claim." *Stoker*, 903 S.W.2d at 341.

Here, plaintiff presents no evidence that Allied failed to timely investigate the claim or that it committed an act so extreme as to cause injury independent of the policy claim. Because the Court has recommended that defendant's motion for summary judgment be granted as to plaintiff's breach of contract claim, and plaintiff has failed to establish an exception applies to the general rule that an insured may not prevail on a bad faith claim absent a showing that the insurer breached the contract, the Court further recommends that defendant's motion for summary judgment as to plaintiff's bad faith claim also be **GRANTED.**

**2. Texas Insurance Code and DTPA**

■ Plaintiff also alleges that defendant committed false, misleading, and deceptive practices prohibited by the Texas Insurance Code, and the DTPA. *See* Tex. Ins.Code § 541; Tex.Bus. & Com.Code § 17.50 (relief for consumers). Additionally, plaintiff alleges that defendant failed to promptly pay the claim in compliance with the Texas Insurance Code's prompt payment provisions and the DTPA. *See* Tex. Ins.Code §§ 542.057 (payment of claim); Tex.Bus. & Com.Code § 17.50(a).

However, in Texas, extra-contractual tort claims pursuant to the Insurance Code and the DTPA require the same predicate for recovery as bad faith causes of action. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir.1997). Accordingly, plaintiff's Texas Insurance Code and DTPA claims also fail in the absence of a viable contractual claim; therefore, defendant's motion for summary judgment as to plaintiff's Insurance claims and DTPA claims should also be **GRANTED.**

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that the defendant's Motion for Summary Judgment be **GRANTED** (docket no. 34).

***Instructions for Service and Notice of Right to Object***

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ. P., any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. ***Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge.*** A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir.1996).

**SIGNED** November 24, 2014.